[Crim. No. 17934. Second Dist., Div. Five. Sept. 30, 1970.]

In re James Jess on behalf of DINO A. MORELLI on Habeas Corpus.

## Counsel

James Jess for Petitioner.

John D. Maharg, County Counsel, Douglas C. Miller and Harold S. Vites, Deputy County Counsel, for Respondent.

## Opinion

**REPPY, J.**—On February 17, 1970, after a hearing in the superior court, processed under an order to show cause, Dino A. Morelli (Morelli), an intended nonparty expert witness in a personal injury action, was found guilty of contempt of court for failing to appear at a deposition proceeding on October 5, 1967, to which the judge hearing the matter found he had been validly subpoenaed. Morelli was sentenced to five days in jail and to pay a fine of $500. His attorney, James Jess (petitioner), on his behalf, petitioned this court for a writ of habeas corpus. We issued an order to show cause and stayed confinement by supersedeas. The superior court (respondent) filed a return to the order to show cause and an answer to the petition. Petitioner filed a traverse. The matter was duly argued and submitted.

Much of the delay between the nonappearance of Morelli at the deposition proceeding and the final adjudication of contempt is attributable to two writ proceedings in the appellate court: *Morelli* v. *Superior Court,*

262 Cal.App.2d 262 [68 Cal.Rptr. 572][1] and *Morelli* v. *Superior Court,* 1 Cal.3d 328 [82 Cal.Rptr. 375, 461 P.2d 655].[2]

The contentions of petitioner raised by the habeas corpus proceeding are:

1. That the papers supportive of the superior court's order to show cause, which formed the complaint charging Morelli with contempt did not give the superior court jurisdiction to act in that (a) the materials supportive of the original order to show cause were not in one document, but in several "vague and ambiguous" ones; (b) the so-called "nonappearance affidavit" of Mavis R. Del Vecchio, the notary and shorthand reporter of the deposition proceeding (the reporter) is not an affidavit but is a certificate and simply recites the unverified (unsworn) statement of Downey A. Grosenbaugh, one of the attorneys for plaintiffs in the underlying action (plaintiffs' attorney), concerning the nonappearance of Morelli; and (c) the papers failed to allege Morelli's residence so as to indicate that he had been subject to subpoena at the time of service (see § 1989, Code Civ. Proc.).

2. That the superior court had no jurisdiction to proceed with the contempt hearing because personal service of the superior court's order to show cause issued June 25, 1968, and its supporting papers had not been made on Morelli, service having been made by mail only on the attorney who allegedly had appeared specially for Morelli on January 19, 1968, in response to bail posted by Morelli in connection with the original order to show cause.

3. That personal service of the superior court's order to show cause in re contempt for disobedience of deposition subpoena, effected in the courtroom on February 6, 1970, was invalid because brought about by subterfuge and by an arrest of Morelli made contrary to the ruling in *Morelli* v. *Superior Court, supra,* 262 Cal.App.2d 262, and because the bailiff did not serve all of the supporting papers.

4. That the superior court improperly continued a motion for continuance, made by Morelli so that he could move for the trial judge's disquali-

---

[1]The essential holding by the Court of Appeal was that Morelli had the right to respond to the order to show cause why he should not be adjudged in contempt for failure to comply with the deposition subpoena by counsel only, even after he had posted bail to secure release from arrest under a bench warrant issued when he failed to appear in person or by counsel pursuant to the order to show cause.

[2]The principle holding by the Supreme Court was that the proceeding which had been reinstituted by a new order to show cause (following the return of the remittitur from the first writ proceeding) issued by the superior court on its own motion was one which was for criminal contempt to preserve the authority of the court and which survived the dismissal of the underlying civil action which had occurred in the interim.

fication to hear the contempt matter, over to the date and time set for the contempt hearing, putting Morelli in the position of not knowing whether he would go to trial on the contempt issue or have a continuance so that his motion for disqualification for cause could be heard by another judge.

5. That the superior court enabled itself to deny Morelli's motion for continuance by improperly striking the disqualification for cause documents on the ground that they were conclusional and sham.

6. That, in effect, Morelli did not have a fair trial because the judge was biased and prejudiced against Morelli.[3]

7. That the superior court deprived Morelli of the right of having the contempt issue heard by a jury.

## DISCUSSION

1. *Inadequacy of Papers Forming Contempt Complaint.* The most provocative point in this respect relates to the showing in the supporting papers as to the factor of residence within the subpoena jurisdiction. We will cover other objections before taking this up.

█ a. There is authority that support for an order to show cause in re contempt may be provided by a combination of documents. (*In re Roth,* 3 Cal.App.2d 226, 236 [39 P.2d 490]; see also 12 Cal.Jur.2d, Contempt, § 60, p. 83.)

b. The reporter who was to officiate at the deposition proceeding executed a document which was one of the papers submitted to the superior court in the course of securing the first order to show cause in November 1967. It was denominated, "AFFIDAVIT RE NON-APPEARANCE." However, it actually was not an affidavit. It commenced, "I . . . do hereby certify:"; and it concluded, "IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my seal of office this 12th day of October, 1967." There follows the signature of the reporter and the impression of her official seal as a notary public in Los Angeles County. In the body, the reporter recites that she appeared at the proper place and time for the purpose of administering the oath to and reporting the deposition of Morelli; that also present

---

[3]Petitioner made the additional contention that the superior court prevented Morelli from presenting to this court as factually complete and as fully supported a petition as he desired by vacating a stay of execution of sentence which it had previously issued. However, this point was rendered moot by reason of the circumstance that this court, when it issued its order to show cause, stayed the execution of sentence by supersedeas.

were plaintiffs' attorney and Donald E. Wood of the firm of attorneys for defendants. She does not list Morelli as being present. She then states that, "The following proceedings were had:". There then follows what constitutes the transcription by the reporter of the statement of plaintiffs' attorney made into the deposition record. There is no indication by the reporter that plaintiffs' attorney was sworn. The attorney, in his statement, asks that the record show that the deposition had been noticed, that a subpoena duces tecum directed to Morelli had been issued by the court and had been served on him, that Morelli had demanded fees and been paid $5, that during a suspension by him (plaintiffs' attorney) of his statement into the deposition record he had made an unsuccessful effort to reach Morelli at California Institute of Technology, that it was 15 minutes past the time set for the deposition, that it appeared that Morelli was not going to attend, and that he was asking the reporter to prepare the transcript and file it with the superior court.

Plaintiffs' attorney executed a declaration under penalty of perjury which was also submitted to the superior court in support of the order to show cause. In it he did not deal with the nonappearance of Morelli for the deposition, but set out circumstances indicative of the fact that Morelli had information relevant to the case.

Code of Civil Procedure, section 1991, states, in part, that, "when [a] subpoena . . . requires the attendance of the witness before an officer . . . out of court, it is the duty of such officer . . . to report . . . disobedience [to such subpoena] . . . to the court issuing the subpoena." We are satisfied that the reporter's certification to the superior court under her official seal, which contained her own statement as to who was present, not including Morelli, and which contained a transcription of plaintiffs' attorney's statement into the deposition record that it appeared that Morelli was not going to attend, was such a report and met the requirements of section 1991.

Code of Civil Procedure, section 1211, reads in part as follows: "When the contempt is not committed in the immediate view and presence of the court . . . an affidavit shall be presented to the court . . . of the facts constituting the contempt, or a statement of the facts by the referees . . . or other judicial officers." We consider that the reporter, who was going to officiate at the deposition proceeding by swearing the witness and taking his testimony in shorthand, was a judicial officer; and we interpret section 1211 as authorizing the circumstances constituting the contempt to be contained in "a statement of the facts" by such a judicial officer as an alternative to an affidavit of the facts made by someone not such a judicial officer. Thus, the portion of the supporting papers indicating that Morelli

had been served with the subpoena duces tecum, demanded and received witness fees, and failed to appear at the required time and place was supplied by the certificate of the reporter. ■ Any elements of the contempt which were derived from the declaration of plaintiffs' attorney met the requirements of section 1211, Code of Civil Procedure, because his declaration was given under penalty of perjury, which by Code of Civil Procedure, section 2015.5 is a satisfactory substitute for an affidavit. ■ Moreover, in connection with the material in the reporter's certificate set out in the form of a transcription of plaintiffs' attorney's statement for the deposition record, it is clear that he was making such a statement as an officer of the court by reason of his status as an attorney.

■ c. With respect to the matter of residence, petitioner cites *Hall* v. *Superior Court* (1932) 124 Cal.App. 603 [12 P.2d 1057]. However, in *Hall,* there is nothing to indicate that there was any reference in the affidavits supportive of the order to show cause re contempt for disobedience of subpoena to circumstances indicative of residence status putting contemner within subpoena jurisdiction. The opinion simply says that the failure to allege that Hall was a resident of Riverside County or of a place within the then mileage limitation was fatal. The situation is different in the instant case wherein a combination of several evidential factors before the superior court makes up a prima facie showing of residence of Morelli in Los Angeles County.

■ What is a prima facie showing depends, of course, on the meaning of "residence" in Code of Civil Procedure, section 1989. "Residence, as used in the law, is a most elusive and indefinite term." (*Briggs* v. *Superior Court,* 81 Cal.App.2d 240, 245 [183 P.2d 758].) The writer in Corpus Juris Secundum says that the word "is like a slippery eel." (77 C.J.S., Residence, p. 289, fn. 54 in pocket part.) It has various meanings for varying legal concepts and under different statutes, depending upon the purpose involved. (*Smith* v. *Smith,* 45 Cal.2d 235, 239-240 [288 P.2d 497]; *Kirk* v. *Board of Regents,* 273 Cal.App.2d 430 [78 Cal.Rptr. 260]; *Briggs* v. *Superior Court, supra,* 16 Cal.Jur.2d, Rev., Domicile, § 3, pp. 763-764, and p. 42, 1970 pocket parts: 77 C.J.S., Residence, p. 303, fn. 13.) "On . . . occasions where the term is employed in statutes . . . , it . . . involves physical presence in a place without requiring the intent to make it one's home which is involved in the domicile concept." (77 C.J.S., Residence, p. 303, fn. 18, citing *United States* v. *Stabler,* 169 F.2d 995, 998.) It can mean dwelling in a place for some continuance of time for business (note Morelli's status at California Institute of Technology) or other purposes. (*Ibid.,* 77 C.J.S. 301.) It does not depend on the manner of living which may be housekeeping or lodging. (*Ibid.,* C.J.S. p. 293.) "The word 'residence' has been held to be equivalent to . . .

'abode' see 1 C.J.S. p. 309, note 2, [or even] 'address' see 1 C.J.S. p. 1460 notes 59, 60." (*Ibid.*, 305.) (Note reference to Morelli's post office box and telephone number in supporting papers.) One may have residences simultaneously in the city and the country (*ibid.*, 294) or for nine months in one place and three months in another. (*Ibid.*, C.J.S. p. 20, 1970 pocket part, fn. 51, citing case of *Fromkin* v. *Loehmann's Hewlett, Inc.*, 16 Misc.2d 117 [184 N.Y.S.2d 63, 65].) A person may have several residences at the same time and for different purposes. (*Burt* v. *Scarborough*, 56 Cal.2d 817, 822 [17 Cal.Rptr. 146, 366 P.2d 498]; *Whittell* v. *Franchise Tax Board*, 231 Cal.App.2d 278, 284 [41 Cal.Rptr. 673].) It, of course, can be different from domicile, which is the most settled and permanent connection and of which a person has but one. (*Smith* v. *Smith*, 45 Cal.2d 235, 239-240 [288 P.2d 497]; *Whittell* v. *Franchise Tax Board, supra*, 231 Cal. App.2d 278, 284.)

 We find no California decisions construing residency for purposes of subpoena power. We feel that residence under Code of Civil Procedure section 1989 clearly is residence in fact and not domicile; that the subpoena section envisages nothing more than an abode, possibly combined with a professional base of operations, which gives the "resident" a sojourning connection with the area of a type and duration related to the status of a witness and which makes it not a hardship for him to attend the legal proceedings at which he is commanded to appear. The appearance of a witness to testify in an action has a different connotation than the basis of venue for an action as to which something akin to domicile was, in an early case, held to apply. (*Younger* v. *Spreckels*, 12 Cal.App. 175 [106 P. 895].)[4]

 In plaintiffs' attorney's declaration he set out that an interrogatory, previously submitted to defendant House of Vacuums by plaintiffs, had requested the "names, addresses, and telephone numbers of all persons having knowledge of the facts" and that said defendant had responded in part by listing "Dr. Dino A. Morelli, P. O. Box 3142 A, Pasadena, California; Du. 4-2394." Plaintiffs' attorney further declared that he was advised by defense counsel "that Dino Morelli did make an inspection of the truck involved, and they have a written report thereof. . . ." In plaintiffs' attorney's transcribed statement, contained in the reporter's certificate, it is indicated that the attorney "endeavored to reach Doctor Morelli at Cal Tech" at "the phone number that I have for him."

In addition to the reporter's certificate and plaintiffs' attorney's declaration, there was submitted to the superior court for the purpose of obtain-

---

[4]Obviously, we make no determination as to what would be the appropriate definition for residence for other purposes.

ing the order to show cause, the original subpoena with the completed return of service thereof on the reverse side, a copy of the application for the subpoena duces tecum, and the notice of intention to take depositions of nonparty witnesses sent to the attorneys.

In the notice of intention to take depositions of nonparty witnesses, plaintiffs gave notice that they "would take the depositions of the following described non-party witnesses: . . . DINO MORELLI, P. O. Box 3142 A, Pasadena, California." In the return of service on the reverse side of the original subpoena, which was executed by the process server under penalty of perjury, it is set out that the name of the person served was Dr. Dino Morelli, that the date of service was October 2, 1967, and that fees were demanded and paid in the amount of $5. In the application for subpoena duces tecum it is set out that Dino Morelli has in his possession "a one page report which he prepared dated October 8, 1966 [which] concerns the mechanical condition of the [involved] vehicle. . . ."

The information furnished by plaintiffs to the superior court, that Morelli had a Pasadena post office address and a local telephone number, that defendants had furnished these to plaintiffs, that Morelli carried the title of "Dr." and was available at California Institute of Technology, that defendants had retained Morelli to make, and that he had made, a study and report about the involved vehicle a year before, that the established and well-known Los Angeles law firm which represented plaintiffs (Meserve, Mumper & Hughes), which would be knowledgeable concerning the residential aspect of subpoena jurisdiction, determined and directed that Morelli should be subpoenaed for attendance at the deposition proceeding at its office, that Morelli, when served, demanded fees,[5] and was paid and kept $5,[6] does, we feel, as previously indicated, make a prima facie showing of residence of Morelli in Los Angeles County.

Clearly, the purpose of the rule that all of the elements of the commission of a contempt of court should be shown in the papers submitted for the purpose of securing an order requiring the alleged contemner

---

[5]Government Code, section 68097.

[6]Under section 68093 of the Government Code one-day's witness fee was $4 and mileage was 15¢ a mile one way. Thus, the $1 fee would have represented a round trip of 13.3 miles.

No offer was ever made to return the fee, not even at the court appearances when Morelli asserted he was a resident only of Oregon. Although the act of demanding and retaining a fee can be considered equivocal, nevertheless one analysis is that the sophistication which is demonstrated by the demand for fees was broad enough to include an awareness by the person of the subpoena jurisdiction and of his status under it and that the demand for fees was made accordingly.

to come before the court and show cause why he should not be adjudged in contempt for his disobedience is to satisfy the court that it has reason to put its compulsive power in motion, that it would have jurisdiction to act by way of calling the alleged contemner before it and inquiring into his conduct, and that it would not be doing so unwarrantedly to the inconvenience of the court and the person involved. A prima facie showing of a nature equivalent to that indicated here should be sufficient to satisfy that rule with respect to any particular element of contempt which might be under consideration. (See *In re Risner,* 67 Cal.App.2d 806, 810 [155 P.2d 667], wherein it is stressed that even at the contempt hearing the moving party initially need only make "a prima facie case," citing *In re McCarty,* 154 Cal. 534, 537 [98 P. 540].) ▮ Such a showing is more probative than a bare conclusional allegation that a person was a resident of a certain county. (See *Hume* v. *Superior Court,* 17 Cal.2d 506, 513 [110 P.2d 669]; *Rosin* v. *Superior Court,* 181 Cal.App.2d 486, 489-490 [5 Cal.Rptr. 421]; *People* v. *Berman,* 117 Cal.App. 334, 338 et seq. [4 P.2d 226].) It was not necessary that the allegations indicating residence be of a compelling nature or of a source which would make them admissible in evidence. Nor is lack of absolute clarity fatal. (*In re Brown,* 66 Cal.App. 534, 537 [226 P. 650]; *Freeman* v. *Superior Court,* 44 Cal.2d 533, 537 et seq. [282 P.2d 857].) ▮ The modern and enlightened approach stresses the feature of a full and fair hearing at which the alleged contemner has the opportunity to appear. (See 17 C.J.S., Contempt, § 72(1), p. 179, and cases cited in fn. 47, including *Van Sweringen* v. *Van Sweringen* (1955) 34 N.J. Super. 394 [112 A.2d 584, 588] reversed on other grounds (1956) 22 N.J. 440 [126 A.2d 334, 64 A.L.R.2d 593], and p. 182, fn. 66.5; § 72(2), p. 185, and cases cited in fn. 74, including one in 1970 pocket parts; § 74, p. 191, and case cited in fn. 57; 17 Am.Jur.2d, Contempt, § 82, pp. 75-76, and § 86, pocket part, fn. 16.5 citing *Yates* v. *United States,* 316 F.2d 718; see also generally, *Lund* v. *Superior Court,* 61 Cal.2d 698 [39 Cal.Rptr. 891, 394 P.2d 707]; *In re Foss,* 123 Cal.App.2d 542 [11 P.2d 676]; *H. J. Heinz Co.* v. *Superior Court,* 42 Cal.2d 164 [266 P.2d 5]; *Clear Lake Water Co.* v. *Superior Court,* 33 Cal.App.2d 710 [92 P.2d 921].)[7]

---

[7]There is also a reason why, even if the material contained in the supporting papers relating to residence were to be considered insufficient to supply that element, Morelli cannot now, in this habeas corpus proceeding, utilize that deficiency to attack the order sentencing him to jail and to pay a fine. In *Morelli* (262 Cal.App.2d 262, 266) in a passage quoted with apparent approval in *Morelli* (1 Cal.3d 328, 334) the Court of Appeal stated that "[A]ny question as to the adequacy of the order to show cause and of the affidavit and declaration on which it was based could and should have been raised by an appropriate pleading in response to that order." This is an indication that whatever was filed up to that date was not such a pleading. The only thing which might have been so categorized was the affidavit of Morelli dated January 18, 1968, and filed January 19, 1968, in which he stated that he was a resident of

█ The form of the affidavit is not significant as long as it affords the potential contemner the requisite information. (Cf. *Smith* v. *Smith,* 120 Cal.App.2d 474, 486-487 [261 P.2d 567].) "[T]he jurisdiction of the court to adjudge a contempt, committed out of its presence, does not depend upon the form of the affidavit which sets the proceedings in motion. . . . The omissions in the affidavit . . . may have been irregularities, but the commitment was not based upon such affidavits, but upon the oral testimony of witnesses, and documentary evidence given and introduced on the return day of the order to show cause." (*Golden Gate etc. Min. Co.* v. *Superior Court,* 65 Cal. 187, 190-191 [3 P. 628].)[8]

2. *Sufficiency of Service of Court's June 1968 Order to Show Cause by Mail on Morelli's Counsel.* Petitioner contends that Code of Civil Procedure, section 1016 required that service of the order to show cause re contempt for disobedience of subpoena be served on Morelli personally. It provides that "[t]he foregoing provisions of this Chapter (chapter 5, Notices, and Filing and Service of Papers) do not apply to the service of a summons . . . or of any paper to bring a party into contempt." *Section*

---

Oregon, but nonetheless did not assert that the supporting papers of the order to show cause were defective.

At the least the appellate court's above-mentioned observation was a clear direction to Morelli to come up with such a pleading upon the processing of any subsequent order to show cause and a message for any subsequent reviewing court to hold that there was a waiver if this were not done. An examination of the record and of the superior court file indicates that no such pleading was filed. To this extent *Morelli* v. *Superior Court, supra,* 262 Cal.App.2d 262, can be looked to as the law of the case. Morelli has cited decisions to us standing for the proposition that where a harsh result would follow (or perhaps, we add, where prior rulings are not full square), it becomes a matter of discretion whether prior rulings will be treated as the law of the case. (*England* v. *Hospital of the Good Samaritan,* 14 Cal.2d 791 [97 P.2d 813]; *Vangel* v. *Vangel,* 45 Cal.2d 804 [291 P.2d 25, 55 A.L.R.2d 1385]; *Wicktor* v. *County of Los Angeles,* 177 Cal.App.2d 390 [2 Cal.Rptr. 352].) In the instant matter, we feel that justice and judicial integrity are well served if we do so treat the prior decision of the Court of Appeal to the extent indicated.

[8]Morelli does not contend that the evidence at the hearing was insufficient to establish residence in Los Angeles County or proper service of the subpoena papers. He concedes that there was conflicting evidence and that the trial court's resolution thereof is binding on appeal.

There was no problem as to the wilfulness of Morelli's nonappearance. It is defined as "a purpose . . . to . . . make the omission." (*Lyons* v. *Superior Court,* 43 Cal.2d 755, 759 [278 P.2d 681]; see also *In re Burns,* 161 Cal.App.2d 137, 142 [326 P.2d 617].)

Morelli may also be considered as having waived any defect in the charging papers stemming from assertedly incomplete allegations concerning residence by the statement of his attorney (Ellis) in his declaration of September 25, 1968, in support of a motion to vacate an order for arrest that he felt that Morelli's forfeiture of bail, the maximum fine for contempt, served to discharge him. Such a position was tantamount to a confession of the offense (nonappearance by a properly served resident) or at least a concession that the offense had been properly charged, including the element of residence.

*1010* which commences the chapter provides that ". . . papers may be served upon the party or attorney in the manner prescribed in this chapter, when not otherwise provided by this code." *Section 1011* provides that service may be personal by delivery to the party or attorney or, if upon an attorney, that it may be made during his absence from his office by certain prescribed means. *Section 1012* provides that service by mail may be made where the person on whom it is to be made has a regular mail service. This, of course, would include an attorney. *Section 1013a* provides how service of mail shall be made. *Section 1014* provides, among other things, that "[a]fter appearance, a defendant *or his attorney* is entitled to notice of all subsequent proceedings of which notice is required to be given." (Italics supplied.) *Section 1015* provides in pertinent part, that ". . . in all cases where a party has an attorney in the . . . proceeding, the service of papers . . . must be upon the attorney instead of the party, except service . . . of papers to bring him into contempt."

 The coupling in section 1016 of process to bring a party into contempt with service of summons indicates a legislative view that they are analogous.[9] Thus, the "paper to *bring* a party into contempt," is to be considered as paper commanding an initial appearance, before the person to be made a defending litigant has an attorney of record. (Italics supplied.) Under the wording of section 1016 service of such an initiating contempt paper is to be made in the same manner as for a summons, which is covered by section 411, Code of Civil Procedure. This calls for the delivery of a copy, except in certain previously stated situations, to the defendant personally. It should also be true that, as with litigation commenced by personal service of a summons, subsidiary process, such as an order to show cause, to the extent that it is like a citation as distinguished from its character as a notice of motion (*Difani* v. *Riverside County Oil Co.,* 201 Cal. 210 [256 P. 210]; *McAuliffe* v. *Coughlin,* 105 Cal. 268 [38 P. 730]; *Sturm* v. *Sturm,* 138 Cal.App.2d 25 [291 P.2d 527]), although not required to be made upon, may be made upon the attorney of record for the litigant.[10]

 In the instant case, Morelli, on November 6, 1967, was personally served with the original order to show cause issued November 2, 1967, at the request of plaintiffs. It required appearance on November 21, 1967.

[9] (See 60 A.L.R.2d 1247, where, citing *Macdermid* v. *Macdermid,* 116 Vt. 237 [73 A.2d 315], it states: "The court said however, that in any situation in which contempt proceedings are sought to be predicated upon a suit . . . which was entirely independent and constituted a separate litigation from the matter with which the contempt proceedings are concerned, a new service of process, as in the institution of an original proceeding, would be necessary.")

[10] Note that section 1015, Code of Civil Procedure, states that service of papers "except . . . other process issued in the suit" must be upon the attorney. No doubt there was an effort to make the language in sections 1015 and 1016 coincide.

Thus, the proceeding was initiated and service of the original order to show cause to bring Morelli before the court was handled as if it were a summons. On November 21, neither Morelli nor an attorney appeared, so a bench warrant was properly issued. (*Morelli v. Superior Court,* 262 Cal.App.2d 262, 264, 268 [68 Cal.Rptr. 572].) Morelli was arrested and secured his release on bail. An attorney, Karmen Dorsey Ellis (Ellis), came to court for him on January 19, 1968. Although he initially announced that he was appearing specially only, it is clear from a transcript of the proceedings of which we take notice,[11] that before he was through he made a general appearance. The minute order for that date reads in part: "Karmen Dorsey Ellis, attorney for non-party witness Dino Morelli, appearing as attorney of record for said non-party witness, makes statements to the court." (Note lack of designation of appearance as special.) When the court ordered issuance of a new bench warrant, Ellis made these statements: "The record will show I am appearing and I am ready to proceed to Show Cause why this Respondent should not be held in contempt. . . . It is my understanding that he [Morelli] had to make an appearance today, and I am making it on his behalf." Also the following colloquy occurred:

"MR. ELLIS: My examination of the files indicates that Dr. Morelli, in response to a subpoena duces tecum, did not appear and that he has to come to this Court and show Cause why he should not be held in contempt.

"THE COURT: He would have to explain why he did not show up at that time. . . .

"MR. ELLIS: I am prepared to show that. . . . Just for the record, Your Honor, it was my understanding that I was instructed to have my client make an appearance today.

"THE COURT: That is right.

"MR. ELLIS: I am making it."

Furthermore, Ellis caused to be filed on January 19, 1968, a declaration of Morelli under penalty of perjury in which, although he stated it was not intended to constitute a general appearance, he declared that on October 2, 1967, he was handed copies of a subpoena and subpoena duces tecum re deposition, but that he was not shown the original of any such papers. This put the question of the validity of the service of the subpoena in issue by reason of the actions of the process server at the time. It was not simply a contention that there was a jurisdictional defect on the face of the papers supportive of the order to show cause such as that they did not indicate

---

[11]The transcript of the January 19th proceedings is in the superior court file and part of the record by that reason.

Morelli's residence. Thus, future proceedings are to be examined from the standpoint that Morelli had made a general appearance.[12]

After the case was remanded from the first writ proceeding, and after a request for dismissal had been filed (March 26, 1968) but before there was a dismissal (July 18, 1968), the superior court on June 25, 1968, issued a minute order which was in the nature of an order to show cause. By this step the superior court, in effect, was reestablishing the contempt proceeding which had been suspended temporarily while the first writ matter was pending before the Court of Appeal. At one point, the superior court characterized its minute order as revitalizing the original order to show cause, as simply a means of letting all counsel know that it was resuming the proceeding as the appellate court in its opinion had indicated it might. However, the trial court did not strictly adhere to this concept but, rather, took the position that the contempt matter was reinstituted by its own order to show cause. Nonetheless, this minute order does not have to be looked upon as an initiating paper intending to bring the alleged contemner before the court for the first time so that it would call for service in the manner of a summons. It is more akin to the issuance of an order to show cause to a party during the pendency of litigation previously commenced through the service of summons wherein appearance had been made and the party had an attorney of record. Morelli, of course, in the instant matter, having been previously served with the original order to show cause and all of the supporting papers, and being "a party" to the separate contempt proceeding, was thoroughly familiar with its purpose, and was represented by counsel. The court's order to show cause indicated that it was issued on the basis of the prior supporting papers, and other copies of them were served on counsel with the second order to show cause. Certainly the basic purpose of serving the second order to show cause was not to make Morelli a party to a contempt proceeding for the first time or to give him and his attorney a second look at the supporting papers, but to make it known to them that the court itself was now the moving party in the contempt issue, and that appearance was again required at a specified time and date.

There is no question but what Morelli got the word. On July 30, 1968, Ellis wrote a letter to the court indicating that he had discussed the situation with his client, Morelli, saying that he had not been authorized to make an appearance for him, and expressing his belief that Morelli would not be required to appear until personal service had been made. Morelli and

---

[12]If it was not a general appearance, then neither Morelli nor his attorney would have been considered as having appeared and the issuance of the January 19 bench warrant, which the Court of Appeal said was not proper (*Morelli* v. *Superior Court,* 262 Cal.App.2d 262, 270 [68 Cal.Rptr. 572]) would have been warranted.

his attorney took their chances on making this stand. Furthermore, in this letter Morelli's counsel took the position that the order to show cause of June 25, 1968, was just a reinstatement of the contempt proceeding previously initiated. His language is as follows: "It would appear . . . that in fact this Honorable Court is reinstating, by means of a Minute Order an order to show cause for failure to appear at the October 5 deposition as per the express terms of the June 25 minute order." Moreover, at this point the trial judge knew that Morelli had asserted that his residence was in Oregon, and Ellis had stated to the court on January 19 that he thought Morelli was in Oregon. So the judge had reason to believe that it might be difficult to make personal service of the new order to show cause on Morelli. (See decisions cited *ante*.)

The minute order of August 9, 1968, the date that the court's order to show cause set as the time for appearance indicates that the trial court felt that its session on June 25, 1968, when it issued the order to show cause, was a continuation of the previous proceedings under the original show cause order which had been suspended when the writ was being processed before the Court of Appeal. It states: "Plaintiff's Order to Show Cause in re Contempt (C.C.P. § 2034(B)(1)) of DINO MORELLI, a non-party witness, for refusal to obey the Subpoena Duces Tecum re Deposition, continued from June 25, 1968, comes on for hearing."

██ It is true that in a show cause proceeding wherein the individual to be the adverse party has not appeared the order serves not only as a notice of the nature of and time for the proceeding but also as a summons giving personal jurisdiction over the individual (1 Witkin, Cal. Procedure (1954) Actions, § 275, p. 798.) ██ However, once personal jurisdiction has been obtained the role of the order to show cause is chiefly to serve as a notice. (See 2 Witkin, Cal. Procedure (1954) Proceedings Without Trial, § 2, p. 1639; Gov. Code, § 26660, subd. (b).) It is, in that situation, sometimes considered the equivalent of a citation, not in the sense of a personal subpoena, but as a direction for an appearance (normally by counsel) to answer the motion being put to the court. Service on the attorney is therefore appropriate. That it is proper in non-contempt matters is clear. (*Reynolds* v. *Reynolds,* 21 Cal.2d 580, 583 [134 P.2d 251]; *Conae* v. *Conae,* 109 Cal.App.2d 696, 697 [241 P.2d 266]; *Russ* v. *Russ,* 68 Cal.App.2d 400, 405-406 [156 P.2d 767]; *Miller* v. *Miller,* 57 Cal.App.2d 354-359 [134 P.2d 292].) The attorney of course, has the duty to apprise his client of the matter. (*Freeman* v. *Superior Court,* 44 Cal.2d 533, 537-538 [282 P.2d 857].) ██ It is clear that Morelli's lawyer did so here. Service of an injunction which can become the foundation for a contempt

proceeding may be on counsel and the later accused person is then deemed to have actual notice thereof. (*Mattos* v. *Superior Court,* 30 Cal.App.2d 641, 647 [86 P.2d 1056]; quoted with approval in *Freeman, supra,* at p. 538, which, however, disapproves another aspect of *Mattos.*)

Since the response to the order to show cause (even initially) may be by counsel (*Morelli* v. *Superior Court,* 262 Cal.App.2d 262 [68 Cal.Rptr. 572]), personal service on the party is not significant. The main thing is that there be an accurate apprisal of the time of the hearing and a fair apprisal of what must be met. (17 Am.Jur.2d, Contempt, § 86, p. 80, and pocket part, p. 10, fn. 16.5 citing *Yates* v. *United States,* 316 F.2d 718.)

As indicated, the trial court had reason to believe that Morelli had gone to Oregon. Although this information was not set out in the moving papers it came to the court through normal procedures in the case. ■ It has been held that where the alleged contemner has left the state or is concealing himself, court-directed service on counsel is sufficient. (*Shibley* v. *Superior Court,* 202 Cal. 738, 742-743 [262 P. 332]; *Foley* v. *Foley,* 120 Cal. 33, 39 [52 P. 122]; *Eureka Lake & Yuba Canal Co.* v. *Superior Court,* 66 Cal. 311, 315-316 [5 P. 490]; see also *Romine* v. *Cralle,* 83 Cal. 432 [23 P. 525]; *Golden Gate etc. Min. Co.* v. *Superior Court,* 65 Cal. 187, 192 [3 P. 628]; *Smith* v. *Smith,* 120 Cal.App.2d 474, 485-486 [261 P.2d 567]; *Kotteman* v. *Kotteman,* 150 Cal.App.2d 483, 484, 486 [310 P.2d 49].)

■ A 1963 change in the law of domestic relations suggests that the Legislature felt that before its passage, even in after-judgment-contempt proceedings, as to a party who had appeared and had counsel, who had not been properly discharged, service of charging papers could be made on counsel. Section 147, Civil Code (added in 1963, and repealed operative 1970), provided that no modification or other order should be valid unless prior notice was served upon the party himself; that service on the attorney of record should not be sufficient. This indicates a legislative contemplation that in pre-judgment domestic relation cases and in other fields the law should continue to permit service of such papers on counsel.

■ Finally, we note that *Morelli* v. *Superior Court,* 1 Cal.3d 328 [82 Cal.Rptr. 375, 461 P.2d 655], did not say that personal service was a jurisdictional requisite. Rather, the implication, if any is to be derived, is that service on the attorney was sufficient. "[P]etitioner has not been personally served . . . , but a copy of the order was mailed to [his] attorney. . . . (See Code Civ. Proc. §§ 1010-1013.)" It seems that at least the Supreme Court left the question open for the trial court hearing the merits to decide: "[P]etitioner will, at the hearing to be held on the order to show cause issued June 25, 1968, have an opportunity to present

evidence that he was not validly served with a copy of *either* order to show cause."[13] (*Morelli* v. *Superior Court, supra,* at p. 333; italics supplied.)

A group of New York cases and the lead case (Indiana) for an A.L.R.2d Annotation, lend support to the position we take. We digest them in the indicated footnote.[14]

We hold that the service by mail on Morelli's attorney of the June 25, 1968, order to show cause and supporting papers was sufficient to support the ultimate hearing in February 1970. There was, of course, an unbroken chain of continuances which kept the matter pending.

Moreover, although the attorney's appearance alone probably did not constitute a waiver of any defect in service, in light of the continued objec-

---

[13] It is felt that the Supreme Court meant either the *subpoena* or the order to show cause of June 25, 1968. There has been no dispute that it was served personally in an effective manner with the first order to show cause re contempt in November 1967.

[14] New York has developed a general statutory rule that service of an order to show cause in a contempt proceeding shall be served on the accused unless the court or judge shall order it served on the attorney. (See *Davidowitz* v. *Hamroff,* 196 Misc. 38 [90 N.Y.S.2d 38], *infra;* cited at 60 A.L.R.2d p. 1248.) This apparently is true even as to a contempt proceeding arising out of a lawsuit which is quite ancillary because of involving a nonparty and an issue unconnected with the object of the lawsuit.

Two New York cases suggest the propriety of making service on an attorney who has made an initial appearance in connection with a contempt proceeding. The first is *Pitt* v. *Davison,* 37 N.Y. 235, commented upon in 60 A.L.R.2d at page 1248. In a specific performance action, defendant was directed by judgment to convey property to plaintiffs. A certified copy of the judgment was served on the defendant personally requiring him to appear at a specified time and place and make the conveyance. He appeared by an attorney, who gave an unsatisfactory excuse, culminating in refusal. The plaintiffs obtained an order requiring defendant to show cause why an attachment should not be issued against him and why he should not be punished for contempt. The order to show cause was directed to be served on the defendant's attorney. It was held that service upon the attorney was sufficient notice to the contemner, a lawful service and sufficient to give the court jurisdiction to make a contempt order. This was so even though the New York statutory law was that when misconduct is not committed in the view of the court, it (the court) should be satisfied by due proof by affidavit of the facts charged "and shall cause a copy of such affidavit to be served on the party accused."

The second is *Rochester Lamp Co.* v. *Brigham,* 1 App.Div. 490 [37 N.Y.S. 402], cited in 60 A.L.R.2d at p. 1249. It holds that once jurisdiction of a person has been acquired by personal service upon him of an order for examination as a witness (he being also a defendant), an order to show cause why he should not be punished for contempt because of noncompliance need not be served upon him personally but service on his attorneys of record is sufficient.

In *Davidowitz* v. *Hamroff,* 196 Misc. 38 [90 N.Y.S.2d 38], it was held a proper exercise of discretion for the court, under New York's statutory rule, to direct that an order to show cause should be served upon an attorney where plaintiff had been directed by a judgment personally served on him to endorse two checks and had not done so, and the defendants got an order to show cause why he should not be punished for contempt of court. We feel that these New York cases generally are supportive of the view we express. (See also *Smith* v. *Smith,* 120 Cal.App.2d 474 [261 P.2d 567] which holds that service after judgment on an attorney was authorized in

tion to the manner of service (see *Foley* v. *Foley,* 120 Cal. 33, 39 [52 P. 122]), the appearance, plus a demand that a jury hear the matter (as stressed by the trial court) may well have constituted such a waiver. In addition, Morelli's unlimited personal appearance on January 30, 1970, (although the trial court did not desire to take any official action in the absence of counsel, who apparently called in as being ill), can be said to have supplanted the lack of personal service of the papers on Morelli. (Code Civ. Proc., § 416; *Donovan* v. *Superior Court,* 39 Cal.2d 848, 851 [250 P.2d 246]; *Cason* v. *Glass Bottle Blowers Assn.,* 37 Cal.2d 134, 140 [231 P.2d 6, 21 A.L.R.2d 1387]; *Raps* v. *Raps,* 20 Cal.2d 382, 384-385 [125 P.2d 826]; *Smith* v. *Smith,* 120 Cal.App.2d 474 [261 P.2d 567]; *MacPherson* v. *Superior Court,* 22 Cal.App.2d 425 [71 P.2d 91].)

The service of papers on Morelli personally in the courtroom on February 6, 1970, was not an initial service for a new contempt proceeding but was accomplished as double assurance that Morelli had the papers. The hearing date was set far enough ahead to ensure due process and so that Morelli and his attorney could not say that they were unprepared for an on the merits hearing because they were going to rely on the trial court acceding to their argument that the prior service had been jurisdictionally defective, a position which, however, they could hardly have expected the court to take.

3. *Validity of Service of Order to Show Cause Dated June 25, 1968, on Morelli in the Courtroom on February 6, 1970.* Since we uphold the validity of the service of the June 25 order to show cause on the attorney by mail, it is unnecessary to pass on the question of whether personal service on Morelli in the courtroom should be considered noneffective because the judge had Morelli brought into the courtroom under the power

a divorce contempt matter on the theory that his client, the defendant-husband, knew he was violating a statutory stay on appeal and would not be allowed to defeat the court's jurisdiction by concealing himself.)

In the annotation in 60 A.L.R.2d 1244, the lead case commencing at 1239 is *State* v. *Pritchard,* 236 Ind. 222 [138 N.E.2d 233, 60 A.L.R.2d 1239]. It is also supportive of our position. It involved a writ of prohibition. After good personal service on a nonresident and his general appearance by attorneys, a temporary injunction was issued. An order to show cause for contempt for violation was served on the attorney. After issuance of an alternative writ, the peremptory writ was denied. It was held: "A distinction should be observed between formal service of process to secure jurisdiction over the person of a party in the commencement of an action, and the right to reasonable notice of the motions, pleadings, and steps taken in the proceedings once a case is begun, and after jurisdiction over the parties has been acquired in the first instance. . . . We can see no logic, nor reason, in requiring a second service of process upon a defendant in a pending case such as this. When an attorney enters his appearance of record in any litigation so long as such attorney remains the existing attorney of record, he is the agent of the party, and the party is bound by such attorney's knowledge and notice of proceedings in that case so long as it is pending." 138 N.E.2d at pp. 234, 235.

of arrest based on noncompliance with an order made personally to Morelli when he appeared in court on January 30, 1970, although his attorney had arranged with the judge for a continuance by reason of his inability to appear, or because all of the backup papers were not served with it. Some consideration is given to this episode in connection with Morelli's claim that the trial court acted improperly in striking the papers relating to his motion to disqualify under Code of Civil Procedure, section 170, subdivision 5.

4. *Trial Court's Continuance of Morelli's Motion for Continuance of Contempt Hearing.* Morelli contends that the trial court acted improperly and deprived him of due process to his prejudice by continuing on its own motion, on February 13, 1970, a motion for a continuance of the contempt trial which had been noticed by Morelli for that date over to February 17, 1970 (the date set for the trial), because it put him in the position of not knowing until that very date whether he was going to have his continuance or go to trial. It is clear that Morelli wanted the continuance not to have more time for preparation but to allow to be heard a motion for reassignment of the hearing to another department on grounds of disqualification for cause (which had had to be and was set for a few days after the then trial date for the contempt proceeding). Morelli had been prepared to go to trial on February 6 and had so indicated at that time. Obviously, considering the long time the matter had been pending and the period of recent time during which Morelli and his attorney knew the trial was imminent if technical defenses were not sustained, there was no problem of preparation on the law and facts. The only item of concern was the mere matter of having witnesses available. Morelli readily could have come prepared for trial subject to what would have been a welcome postponement if his motion for continuance was granted. The only problem then would have been some imposition on witnesses if Morelli had felt he could not rely on his own witnesses to be on standby. Moreover, Morelli and his attorney were in a fairly good position to have evaluated the chances for a continuance. They could have anticipated that it should be granted if the moving papers on the motion for reassignment were not stricken since that motion should have had precedence over the contempt hearing. The judge acknowledged that that would have had to have been his approach. Furthermore, Morelli could have anticipated that judicial consideration would be given to the matter of striking the disqualification papers. On February 16, 1970, the judge had filed an answer and motion to strike and mailed copies to counsel. Accompanying the pleading were written points and authorities on the right of a trial judge to strike moving papers, which, because of inadequacy of form or substance, did not constitute a ground of disqualification. Admittedly, the time factor of filing and service was

short,[15] but a similar motion to strike had been made with respect to a prior motion for reassignment on grounds of disqualification for cause in October of 1968. Moreover, Morelli and his attorney were cognizant of the nature of their own moving papers and would have had a good idea whether they were vulnerable to being struck. In addition, we note that the continuance was ordered on the ground of defective service. This was a valid ground. The notice of motion for continuance and order shortening time were served only on the attorneys for the original plaintiffs who were now out of the case and not upon the county counsel acting for the trial court as the moving party in the residual criminal contempt matter. Actually, the court could have dismissed the motion. Finally, as hereinafter dealt with in detail, the trial court had good grounds for considering that the motion for disqualification had not been effectively related to the contempt hearing, so that Morelli could not have optimistically looked forward to a continuance on February 17, 1970.

5. *Validity of Order Striking from Files the Papers Asserting Disqualification under Code of Civil Procedure 170, Subdivision 5, Making Continuance Motion Moot.* We first set out a composite of guiding legal principles established by various decisions and then analyze material in the instant case in light thereof.

A motion for the reassignment of a hearing before a trial court, based on disqualification of a trial judge for cause (Code Civ. Proc., § 170, subd. 5), and the papers supporting it may be stricken from the files by the trial judge involved when all that said papers contain are: conclusions; references to copious transcripts without citation to specific excerpts; allegations of facts not pertinent or appropriate to the issues to be determined in the hearing; material not legally indicative of bias or prejudice, such as judicial opinions expressed in the discharge of litigation and legal rulings; judicial reactions based on actual observance in participation in legal proceedings; and references to circumstances so inconsequential as to be no indication whatsoever of hostility and nonprobative of any bias or prejudice. (*People* v. *Sweeney,* 55 Cal.2d 27, 35 [9 Cal.Rptr. 793, 357 P.2d 1049] (general principle); *Calhoun* v. *Superior Court,* 51 Cal.2d 257, 260-261 [331 P.2d 648] (general principle; matters of law); *Kreling* v. *Superior Court,* 25 Cal.2d 305, 310-312 [153 P.2d 734] (expressions of opinion; reaction from observance);[16] *Hume* v. *Superior Court,* 17 Cal.2d

---

[15]It appears that Morelli's attorney did not get the answer before his appearance and that he was handed a copy in court.

[16]*Kreling* says that when the state of mind of the trial judge appears to be adverse to one of the parties, but is based upon actual observance of the witnesses and the evidence during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him in the trial of the action. Compare the trial judge's

506, 514 [110 P.2d 669] (pertinency); *Fishbaugh* v. *Fishbaugh*, 15 Cal.2d 445, 456 [101 P.2d 1084] (not pertinent to contempt issues); *McEwen* v. *Occidental Life Ins. Co.*, 172 Cal. 6, 11 [155 P. 86] (expression of opinion); *Oak Grove School District* v. *City Title Ins. Co.*, 217 Cal. App.2d 678, 701-702 [32 Cal.Rptr. 288] (discussion on appropriateness of issue of fact presented and specification); *Mackie* v. *Dyer*, 154 Cal. App.2d 395, 399-400 [316 P.2d 366] (appropriateness of issue of fact; matters of opinion; legal rulings); *Estate of Buchman*, 132 Cal.App.2d 81, 102-104 [281 P.2d 608, 53 A.L.R.2d 451] (legal rulings; expression of opinion; *People* v. *Darby*, 114 Cal.App.2d 412, 439 [250 P.2d 743] (legal opinions; lack of hostility); *People* ex rel. *Dept. of Public Works* v. *McCullough*, 100 Cal.App.2d 101, 111 [223 P.2d 37] (inappropriate to contempt issues); *Goodspeed* v. *Great Western Power Co.*, 19 Cal.App.2d 435, 450 [65 P.2d 1342] (no knowledge, experience or opinion can give rise to bias unless it results in hostility); *Ryan* v. *Welte*, 87 Cal.App.2d 888, 893 [198 P.2d 351] (expression of opinion on the law); *People* v. *Emmett*, 123 Cal.App. 678, 682 [12 P.2d 92] (failure to specify); *People* v. *Berman*, 117 Cal.App. 334, 338-339 [4 P.2d 226] (conclusions).)

A digest of a series of cases (not fully exhaustive but representative) wherein the remarks or actions of the trial court were asserted but found not to be sufficiently factual, consequential and pertinent to warrant a hearing before a second judge is set out in the indicated footnote.[17] Also a few cases, wherein the remarks demonstrated disqualifying bias, are listed.

---

expression of opinion in the instant case based on his exposure to the order of plaintiffs' show cause documents and the presentations of Morelli through documents and the words of his counsel.

[17]*Insufficient Showing Cases:*

*Ryan* v. *Welte*, 87 Cal.App.2d 888 [198 P.2d 351] (Although court responded to movant's disqualification papers, Court of Appeal made analysis disregarding judge's reply and found showing insufficient. Here the remarks of the court were that: granting plaintiff right to amend was courtesy only; plaintiff could not amend to satisfy the court; if amended pleading were filed, demurrer would be sustained; agreement upon which action was based had to be in writing. Court refused the request to assign to another judge. Held that remarks of the judge plus fact his opinion was erroneous did not disqualify.).

*Fishbaugh* v. *Fishbaugh*, 15 Cal.2d 445, 456 [101 P.2d 1084] (Defendant misrepresented his financial condition; he took the law into his own hands.).

*People* v. *Darby*, 114 Cal.App.2d 412, 438 [250 P.2d 743] (Averred that trial judge was prejudiced against defendant "for having failed to file his petition for a writ of prohibition in the Supreme Court by presenting it to the Chief Justice in person.").

*Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 182 et seq. [281 P.2d 250] (In prior criminal proceeding where Bompensiero was witness, court remarked that board of equalization should revoke licenses of those who refuse to testify; Bompensiero was a liquor licensee and had refused to testify; little basis for claiming bias; proper to strike.).

*Lassen Irr. Co.* v. *Superior Court*, 151 Cal. 357, 363 [90 P. 709] (Judge trying

The circumstances, as alleged by Morelli in his declaration, involved certain statements and certain actions of the trial court. We list them as briefly as possible in that order. In brackets at the end of each item we characterize its nature from the standpoint of the legal principles just reviewed. Some of the items probably are indisputable because they appear in the transcripts of certain proceedings, although they may be subject to different connotations than those suggested by Morelli. Others are disputed. ■ The trial judge made oral explanations as he analyzed them, but these cannot be taken into consideration in determining whether the moving papers specified sufficient pertinent fact material to frame an issue and warrant a hearing before another judge. They are the type of thing that such another judge would consider in resolving the issue if it were put to him.

■ On November 21, 1967, when the original order to show cause re contempt was returnable, the trial court stated: that plaintiff's counsel "was not the only one to have had this very problem with Morelli" (obtaining his appearance for a deposition) [not pertinent to contempt issues (method of service and residence)]; that Morelli had loyalty only to science and that this had little bearing on his attitude toward being responsive to a subpoena [not pertinent to contempt issues]; that Morelli's getting $5 and saying that he would not show up was incongruous [not pertinent to contempt issues]; that plaintiff's attorney could tell Morelli that jail might be his abode over the weekend [not pertinent to contempt issues]; that the

action not disqualified because he had counseled with other persons not parties who had similar causes of action against defendant.).

*People* v. *Nolan,* 126 Cal.App. 623, 629-630 [14 P.2d 880] (The allegations were that trial judge had denied a continuance of a week, giving only a day and one-half; that he had said "that he was opposed to having cases of this sort continued; that they ought to be tried right away;" that his manner toward defendant was arbitrary, his language and expression indicative of extreme dislike. Held to be generalities dependent on inference from conduct; only item indicating bias was statement of being opposed to cases of that nature, and this only slight evidence; striking justified.).

*Mackie* v. *Dyer,* 154 Cal.App.2d 395 [316 P.2d 366] (Trial court denied motion for continuance; stated he had no faith in defendant's presentation, did not believe him, only thing wrong was the defendant, had read defendant's letters and had had it.).

*Sufficient Showing Cases:*

*Calhoun* v. *Superior Court,* 51 Cal.2d 257 [331 P.2d 648] (Trial judge gratuitously filed an affidavit when district attorney was opposing bail of defendant on appeal, saying that in his opinion evidence at trial overwhelmingly sustained charges in indictment, defendant was guilty, and appeal was only for delay.).

*Evans* v. *Superior Court,* 107 Cal.App. 372, 382-383 [290 P. 662] (Positive opinion of lack of credibility of defendant witness who was alluded to as a pirate.).

*Chastain* v. *Superior Court,* 14 Cal.App.2d 97 [57 P.2d 982] (As to case to be retried, court had stated that defendant and some of his witnesses had perjured themselves.).

trial court could be quoted to the effect that "its order would not be flaunted, Dr. Dino Morelli, to the contrary notwithstanding"[18] [not pertinent to contempt issues]. The sessions referred to occurred before Morelli filed his first motion for reassignment, and it does not appear that these specifications were included. They well could be considered waived for that reason. However, we have considered them and arrive at no different conclusion than if they were not present.

In the proceeding of October 29, 1968, it appeared for a time to the trial court that there might be a chance to have the contempt matter heard on the merits. It endeavored to set a time, but Morelli's attorney indicated that the matter of an outstanding arrest warrant would have to be resolved first. The trial court then stated that such an approach demonstrated evasiveness and procrastination and amounted to the same tactic that Morelli had indulged in previously [not pertinent to contempt issues and expression of opinion in discharge of judicial business]; that it was continuing the pending matters and issuing another warrant to retain jurisdiction because it was "faced with every kind of technicality. . . ." [expression of opinion in discharge of judicial business]; that (when Morelli's counsel said that it was his wish to resolve the entire matter) this might be his (the attorney's) wish, but "it never has been [Morelli's] wish as evidenced by his conduct up to this time" [not pertinent to contempt issues]; and that, just as a side commentary, if it (the trial court) could not execute three bench warrants at a university, what hope was there to reach a felon by a bench warrant[19] [expression of opinion in discharge of judicial business].

Apparent actions of the trial court were considered by Morelli to have been deducible from the following circumstances assertedly observed by Morelli. Within the covers of the file of the underlying case (Barry, SOC 14164) was another case file (L.A. 95044) wherein Morelli was suing Grosenbaugh and another attorney and process server (Skoog). The name of the trial judge was on the chargeout card for the latter file. (All inappropriate to contempt issues.)[20] ██ ██ There was a letter in file No.

---

[18]It should be noted that at the same session the trial court stated, in effect, that out of courtesy to a man of Morelli's standing, it would hold execution of the bench warrant it was ordering for a few days.

[19]It should be noted that at the same session the trial court said that if Morelli would come in, it would stay the order for the warrant because it wanted a determination of the principle issue; that it would be easy for Morelli to come in; that he was a person of very high standing in the community, a professor at the university, and a man from whom the court would expect cooperation.

[20]There was no harm in the trial judge seeing this other file. See *People* ex rel. *Dept. of Public Works* v. *McCullough*, 100 Cal.App.2d 101, 106 et seq. [223 P.2d 37]. A section 170, subdivision 5 affidavit, filed before the hearing of a motion for new trial, alleged that the trial judge had seen juror affidavits which sought to impeach the jury's verdict in a manner then impermissible. It was held that it was only where

L.A. 95044, dated December 10, 1969, preliminarily addressed to the trial court, to which was stapled a copy of the Supreme Court decision in *Morelli* v. *Superior Court,* 1 Cal.3d 328 [82 Cal.Rptr. 375, 461 P.2d 655]. The letter referred to a prior telephone conversation with attorney Grosenbaugh. The letter was before the trial court and is part of the record on appeal. It is well to state right now that the letter, itself, dispels the innuendo in which Morelli wants us to indulge. It was marked for the attention of the clerk, and the prior conversation mentioned in it obviously was between Grosenbaugh and the clerk concerning the rights of Morelli for rehearing in the California Supreme Court and for recourse to the United States Supreme Court, obviously calendar factors (action in discharge of official duty).

In the Barry file there was reference to a bench warrant dated June 25, 1968,[21] the same date that the court's order to show cause was issued. (Legal ruling.)

Morelli characterizes the court's action on February 6, 1970, of setting the contempt trial on February 17 as unfair. This is conclusional. The transcript of that proceeding speaks for itself. It discloses that there was

---

an appropriate issue of fact is raised concerning the disqualifications of the trial judge that he is prevented from passing upon the question of his own disqualification under section 170, subdivision 5. See also *Fishbaugh* v. *Fishbaugh,* 15 Cal.2d 445, 456 [101 P.2d 1084] [reading of depositions not in evidence].

[21]There was such a reference in the pink minute order sheet in the superior court file which had the detail of the court's order to show cause. However, it was not included in the white ribbon copy of the actual order to show cause issued by the court. It is posed by Morelli that this indicates that the trial court was anticipating disobedience to the order to show cause. This is not logical. Rather, the apparent original intention to issue such a warrant seems based on Code of Civil Procedure, section 1212, which states that a warrant of attachment may issue in the case of indirect contempt. In light of language in *Morelli* v. *Superior Court,* 262 Cal.App.2d 262 [68 Cal.Rptr. 572], we conclude that an optional procedure is open when papers adequately charging a constructive contempt are presented: (1) an order to show cause may issue. If this step is used no bench warrant should issue unless there is a failure to appear in person or by attorney; or (2) a warrant of attachment may issue with bail. (See Code Civ. Proc., § 1213 as to bail.) Apparently the moving papers are filed to get the warrant issued and copies are served with it. The bail, if obtained, is to call for the appearance of the alleged contemner or his attorney. This analysis, of course, is a construction of the code section. It is not contained explicitly within its wording. The trial judge's understanding it another way was reasonable. In any event, errors in law do not show prejudice. See authorities cited *supra.* It also is convenient to add at this point that it seems to us that when neither Morelli nor his attorney appeared on the date specified in the first order to show cause, which read further; "if any you have," the trial court could have treated the nonappearance as an indication that Morelli had no cause to show, taken evidence, and, determining it to be adequate, found the jurisdictional facts, embodied them in an order adjudicating the content, and issued a warrant to secure the presence of Morelli for sentencing. After Morelli had been sentenced, there then could have been tested the validity of the order to show cause and the order of contempt on their faces. This probably would have avoided some of the intervening judicial exercises.

some problem in selecting a date which would meet the calendars of all counsel. However, one was finally chosen which was agreeable to all, including Morelli's attorney. He had suggested an earlier date, but the court particularly wished to allow enough time so that Morelli would not lack due process of law. (Legal ruling.)

At the proceeding on February 6, 1970, when Morelli was in the hall outside the courtroom, the trial court had him arrested and brought into the courtroom at which time he was served with the June 25 order to show cause papers. Here again the record speaks. It indicates that the trial court, from its standpoint, was acting on the belief that its direct order on January 30, 1970, to Morelli (who was then in court), as a party and potential witness, to appear in court on February 6 was valid and that his nonappearance was a direct contempt. (See *Arthur* v. *Superior Court,* 62 Cal.2d 404 [42 Cal.Rptr. 441, 398 P.2d 777]; *Chula* v. *Superior Court,* 57 Cal.2d 199 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421]; see *Lyons* v. *Superior Court,* 43 Cal.2d 755 [278 P.2d 681]; and Witkin, Cal. Procedure, 1967 Supp., Trial, § 5, pp. 635-637—all relative to an attorney's nonappearance at scheduled times.) Although there is some question whether the trial court had the right to treat Morelli as a witness, because in this quasi-criminal proceeding he probably had the privilege not to testify (see *Brophy* v. *Industrial Acc. Com.,* 46 Cal.App.2d 278, 283 [115 P.2d 835]), it is clear that the trial court was acting on what it thought was legal sanction and not out of sheer perversity or personal animosity toward Morelli. Thus, this does not show bias as to the merits of the trial relating to the refusal of Morelli to obey the deposition subpoena. (Judicial view of the law.)[22]

---

[22]Morelli in his petition for writ of habeas corpus, alluded to additional items allegedly indicative of judicial bias. Since they were not included in the papers supporting the section 170, subdivision 5 motion, they have no bearing on the validity of the trial court's action of striking those from the file. However, so that the entire aspect of possible prejudice can be aired, we list these claims here as briefly as possible, again indicating that the trial judge filed responses but showing that the assertions themselves would not have required a separate hearing.

When the date for hearing was being discussed, the trial court said to counsel for Morelli: "You have had two years, Counsel. You have been around and around on a merry-go-round for two years. The day of reckoning is here, so don't ask time to prepare." (Expressing of opinion in discharge of judicial action.) Morelli has been last on the calendar call. (Judicial action.) The clerk attempted to extract filing fees which were not due (not pertinent). Morelli ordered to file papers with the clerk in trial court's department, instead of central division. (Judicial ruling; even if irregular, which we do not decide, this does not show a bias which would relate to trial court's ability to afford a fair hearing on the issues involved on the merits. On several occasions the trial court made it known that any dissatisfaction it seemed to have with procedural aspects would in no way affect its deliberate intention to afford Morelli a fair and impartial hearing on the merits.) Trial court refused to shorten or extend time; a minute order in September 1968 stated: "Application for order shortening time denied. The applicant has been advised of these proceedings for months and is entitled to no special consideration." (Judicial ruling.) Trial court never granted Morelli a single motion. (Judicial ruling.)

The declaration of Morelli's counsel submitted in support of the motion made conclusional references to the transcripts to which Morelli had alluded, including a characterization of the arrest-and-service-of-papers-incident on February 6, 1970, and of the exchange of remarks leading to the designation of a trial date. They, of course, are not a substitute for the actual transcripts. ▮ As indicated above, the transcripts show judicial action based upon generally accepted principles with no overtones of personal bias.

▮ The last part of the attorney's declaration related to the trial court's refusals to shorten or extend time for court procedures. He does not characterize the alleged actions as arbitrary and does not refer to the record. The minutes of the court relating to the episodes do not reflect any arbitrary action. Judicial steps of this nature do not show bias even if the rulings were erroneous. Such rulings "even when numerous . . . form no ground for a charge of bias. . . ." (*McEwen* v. *Occidental Life Ins. Co.,* 172 Cal. 6, 11 [155 P. 86].)

The formal statement of charges signed by the attorney and verified by Morelli presumably was presented as a statement of specifications and, no doubt, was intended to be no more than a series of conclusions topical of the matters attempted to be dealt with factually in the other documents.

▮ Finally, admittedly technical (but nonetheless in a different category, we feel, that the absence of a conclusional allegation on residence in the contempt charging papers labeling the prima facie fact showing as such) is the circumstance that the motion for reassignment to another judge on the ground of disqualification for cause is made applicable only to "the hearing on said non-party witness' motion to vacate the order for arrest." This motion was still pending, as shown by the successive minutes of the court. A notice of this motion had been filed September 27, 1968, continued from its originally set time, because of calendar conditions, and then regularly continued thereafter along with the contempt hearing. It is true that the motion asks that the trial judge not be authorized to sit at other proceedings, that the Morelli declaration refers to the judge before whom the contempt trial may be assigned, and that the statement of specifications states that it is in opposition to the selection of the particular judge in a trial to determine the guilt or innocence of Morelli, which suggests that there may have been an inadvertent error in the notice of motion (perhaps because the former motion had been used as a guide in preparation); but, nonetheless, the motion itself as identified in the notice, was not aimed at the contempt hearing and did not mention it specifically and there was never any request to amend. No hearing on the motion to vacate the order for arrest was held. The motion to reassign that hearing on disqualification

grounds could have been granted with no effect on the contempt proceedings.

We conclude that the moving papers were inadequate and that the trial judge had the right to strike them. It was not necessary for another judge to pass on the trial court's qualification to sit on the contempt trial. There was, therefore, no need for a continuance.

6. *Fairness of Contempt Hearing.* Morelli appears to contend finally that, even if his showing on his section 170, subdivision 5 motion was so insufficient as to allow the trial judge to strike it, as the trial itself went, it demonstrated that the judge, indeed, was prejudiced to the extent that Morelli was not afforded a fair trial. We have thoroughly scrutinized the record in respect to this contention and do not find that the judge acted in a prejudicial manner. He did rule, on his own, that certain questions were objectionable. However, this was his prerogative, and the circumstances gave him the discretion to make the rulings which he did. They were not arbitrary. There was no prejudgment. (See 17 Am.Jur.2d, Contempt, § 85 1969 Supp. p. 9, fn. 5.5, citing *Ungar* v. *Sarafite,* 376 U.S. 575 [11 L.Ed.2d 921, 84 S.Ct. 841], rehg. den. 377 U.S. 925 [12 L.Ed.2d 217, 84 S.Ct. 1218].)

7. *Asserted Right to Have Contempt Issue Heard Before a Jury.* We are satisfied that there was no right to have the matter heard before a jury. The proceeding was quasi-criminal. The maximum penalty in the instant case was limited to five days in jail and $500 fine. This placed the matter, under constitutional considerations, within the "petty" classification. (*Pacific Tel. & Tel. Co.* v. *Superior Court,* 265 Cal.App.2d 370 [72 Cal. Rptr. 177], citing *Duncan* v. *Louisiana,* 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444] and *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U.S. 216 [20 L.Ed.2d 538, 88 S.Ct. 1472]; see also 17 Am.Jur.2d, Contempt, § 64, 1969 Supp. p. 8, citing *United States* v. *Barnett,* 376 U.S. 681 [12 L.Ed.2d 23, 84 S.Ct. 984], rehg. den. 377 U.S. 973 [12 L.Ed.2d 742, 84 S.Ct. 1642]; *Cheff* v. *Schnackenberg,* 384 U.S. 373 [16 L.Ed.2d 629, 86 S.Ct. 1523]; *Baldwin* v. *New York,* 399 U.S. 66 [26 L.Ed.2d 437, 90 S.Ct. 1886].) *People* v. *Sorenson,* 111 Cal.App.2d 404 [244 P.2d 734], cited by Morelli, is not in point.

8. *Nature of Order Finding in Contempt.*

Morelli has made no attack based on any possible inadequacy of the composition of the order adjudging him in contempt. In any event, the generally recommended standard that the order recite every factor essential to the contempt holding appears to have been promulgated for application in direct contempt cases wherein there is no filing and serving of charging

documents which present a prima facie showing of such elements or a record thereof.[23] The significant thing in the indirect contempt cases is that the record contain the findings upon which the contempt order is based.

9. *Disposition.* The order to show cause heretofore issued by this court is discharged, and the petition for writ of habeas corpus is denied.

Stephens, P. J., and Selber, J.,* concurred.

---

[23]An order finding a person in direct contempt must recite all elements. (*Vaughn* v. *Municipal Court,* 252 Cal.App.2d 348, 357 [60 Cal.Rptr. 575].) Probably a written order or written findings made on the basis of the presenting affidavits at a hearing at which contemner did not appear should recite the existence of all its elements.

*Assigned by the Chairman of the Judicial Council.