[No. B216904. Second Dist., Div. Two. June 21, 2010.]

In re ORLANDO C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ORLANDO C., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., III. and IV. of the Discussion.

1186

## COUNSEL

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Stephanie C. Brenan and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHAVEZ, J.**—Orlando C., a minor (minor), appeals from an order declaring him a ward of the juvenile court pursuant to Welfare and Institutions Code section 602[1] by reason of his having willfully disobeyed a court order (Pen. Code, § 166, subd. (a)(4)) by violating a gang injunction. The juvenile court placed him on informal probation for six months, setting a maximum term of confinement of six months. Minor contends that vacation of the judgment and dismissal of the section 602 petition are required because (1) he was not a person subject to the gang injunction, (2) there was no evidence his parent had been served with, or had knowledge of, the gang injunction, and (3) the gang injunction is constitutionally overbroad, violating his constitutional rights to freedom of association and travel or movement. Minor also requests that we correct the minute order of May 12, 2009, to accurately identify the petition that the juvenile court sustained and the petition that it dismissed.

We affirm with directions.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The section 602 petitions*

On November 7, 2008, the district attorney filed two section 602 petitions against minor, each alleging a misdemeanor violation of Penal Code section 166, subdivision (a)(4), for "[w]illful disobedience of the terms as written of any process or court order . . . lawfully issued by any court . . . ." One of the petitions, denominated "Petition A," alleged that on September 7, 2008, minor violated the civil gang injunction issued by the Los Angeles Superior Court on March 7, 2008, in *People v. Varrio Hawaiian Gardens* (2008, No. BC375773) (the gang injunction), against the Varrio Hawaiian Gardens gang (VHG). The other petition, denominated "Petition B," alleged that he violated the gang injunction on September 12, 2008. After the adjudication hearing, the juvenile court sustained Petition A and dismissed Petition B.

### B. *The gang injunction*

The gang injunction provided, among other restrictions within the geographical area specified in the injunction (the Safety Zone), a curfew for minors under the age of 18, between 8:00 p.m. one day and 5:00 a.m. the next day, with exceptions only for (1) going to and from classes or bona fide after-school activities, (2) actively engaging in a trade, business or occupation, or (3) a legitimate emergency.[2]

---

[2] The pertinent provisions of the gang injunction are as follows: "Defendant Varrio Hawaiian Gardens Gang (a.k.a. 'VHG,' 'VHGR,' 'HXG,' 'HG,' and 'Hate Gang'), its members, and all persons acting under, in concert with, at the direction of, or in association with them or any of them for the benefit of Varrio Hawaiian Gardens, are restrained and enjoined from engaging in or performing, directly or indirectly, any of the following activities in the Safety Zone [(an area described in detail in the injunction and outlined on a map attached to the injunction)]. [¶] . . . [¶] g. Obey Curfew: [¶] I) If under eighteen (18) years of age, being in or upon public property, or in a public place, between 8:00 p.m. on any day and 5:00 a.m. of the following day, unless (1) going to or from school classes, a legitimate after-school activity (school dance, school athletic competition, or other school-sponsored event), or work, or (2) actively engaged in a legitimate business, trade, profession or occupation, or (3) involved in a legitimate emergency situation that requires immediate attention; [¶] . . . [¶] III) 'Public Place' means the public way and any other location open to the public, whether publicly or privately owned, including but not limited to any street, sidewalk, avenue, highway, road, curb area, alley, bridge, parking lot, automobile, whether moving or not, playground, park or other public ground or public building, any common area of a school, hospital, apartment house, office building, shop, or privately owned place of business, to which the public is invited, including any place of amusement, entertainment, or eating place."

## C. *The September 7, 2008 curfew violation*

### 1. *The prosecution's evidence*

#### a. *The injunction violation*

On September 7, 2008, near 1:00 a.m., Sheriff's Deputies Steve Cox and Freddy Brown were in their patrol car and conducted a traffic stop of a car with two youthful-appearing Latino males. The deputies believed they were violating the Los Angeles County 10:00 p.m. and Hawaiian Gardens 8:00 p.m. curfews. The stop occurred within the Safety Zone. Minor, who was 15 years old, was the passenger. The driver was 20 years old and said he was minor's brother. Both were cooperative and gave their names and birth dates. When asked by Deputy Brown whether or not he had been served with an injunction, minor responded, "Yes, but I'm not a gang member."[3] Minor did not indicate he was involved in an emergency situation. Deputy Cox noted minor's tattoos and verified the young men's identities and ages and learned that minor had been served with the gang injunction on July 9, 2008.

#### b. *The gang evidence*

Detective Brandt House, who was in the sheriff's gang unit and assigned to the VHG gang for three and one-half years, testified as a gang expert. He had had numerous contacts with VHG members, was familiar with the gang's history, rivals, signs, and the types of crimes committed and had assisted in obtaining the gang injunction. Detective House was also aware of VHG graffiti, slang and clothing. Detective House testified that VHG engaged in "all manner of crimes," and Chivas and Artesia gangs were its rivals.

Based on his review of information obtained from other deputies and found in arrest reports, field investigation cards, and school discipline records, Detective House opined that minor was a VHG gang member. His opinion was not based on any one factor, but on a combination of factors.

One such factor was minor's tattoos, which included a memorial to a recently murdered VHG member, Arthur Menchaca; a generic gang tattoo "la vida loca," three dots meaning "my crazy life"; and a depiction of a Mexican bandit.

Detective House also considered various field identification cards which pointed to minor's membership in the VHG gang. One such card, related to a

---

[3] When minor was detained five days later for again violating the curfew provision of the gang injunction (which incident was the subject of the dismissed Petition B), he stated: "Fuck, I'm on the injunction. You might as well take me to jail."

July 9, 2008 contact with minor, revealed that minor admitted membership in VHG. In a September 12, 2008 contact, minor admitted being an associate of VHG, but denied membership. Detective House explained that if a gang member did not know if a law enforcement officer knew him to be a gang member, he might deny membership, but with a deputy he believed to be aware of his gang membership, he might admit it. Another possible scenario was that minor denied gang membership after being served with the gang injunction. The field identification cards also revealed that contacts with minor occurred in VHG territory.

School discipline records documented several altercations involving minor at school, where comments were made suggesting his gang affiliation, including his calling someone a "rat" and "Arte," references to the rival Artesia gang, and yelling "HG" during a couple of confrontations.

Detective House also considered the presence of "V.H.G." graffiti near minor's house as well as his hairstyle and gang attire in reaching his conclusion that minor was a member of VHG.

Detective House explained that at the time a person admitted VHG membership to law enforcement, a deputy would serve the person with a copy of the gang injunction. Detective House was aware of only three instances where a person was inappropriately served with the gang injunction. In those cases, Detective House nullified the service. Minor was not one of those whose service was nullified.

### 2. The defense's evidence

In December 2007, Claudia R., minor's mother, noticed VHG gang graffiti on two palm trees at the curb, in front of her house. She and minor painted over it. There was no other graffiti on her house.

On September 7, 2008, at approximately 11:00 p.m., Claudia R. gave minor permission to go to the store with his young adult cousin, Ernie.

Claudia R. had known Arthur Menchaca since the latter was seven years old. She was aware minor had had a tattoo with Menchaca's name, but it had been removed. Claudia R. did not like the tattoo because Menchaca was a gang member, but she had never seen minor and Menchaca together. Her son was not a VHG gang member.

### D. The juvenile court's ruling

The juvenile court sustained Petition A relating to the September 7, 2008 curfew violation and dismissed Petition B. The juvenile court noted "that the

People have sustained their burden as to [Petition A] only" noting that the violation "is only a technical one. I am not 100 percent convinced that [minor] is, in fact, a gang member."

## DISCUSSION

I. *Minor was subject to the gang injunction**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Service of injunction on parent*

■ Minor contends that the judgment must be vacated and petition dismissed because there was no evidence his parent was served with, or had knowledge of, the gang injunction. He argues that disobeying a court order under Penal Code section 166, subdivision (a)(4) is tantamount to a contempt of court and thus the injunction was required to have been properly served on him. Code of Civil Procedure section 1016 provides that the provisions of part 2, title 14, chapter 5, dealing with "Notices, and Filing and Service of Papers" (Code Civ. Proc., § 1010 et seq.), "do not apply to the service of a summons or other process, or of any paper to bring a party into contempt." (§ 1016.) Citing *In re Morelli* (1970) 11 Cal.App.3d 819 [91 Cal.Rptr. 72] (*Morelli*), minor argues that the reference in Code of Civil Procedure section 1016 to both summons and contempt together "indicates a legislative view that they are analogous," and consequently, service of an initiating contempt paper must be "made in the same manner as for a summons." (*Morelli, supra,* at p. 835.) ■ Code of Civil Procedure section 416.60 provides that a summons must be served on a minor at least 12 years old by serving the minor and the minor's parent, and that did not occur here. This contention is not persuasive.

■ First, the fact that Code of Civil Procedure section 1016 provides that both summons and contempt papers are not served in the manner specified in the "Notices, and Filing and Service of Papers" chapter, supports only the conclusion that both cannot be served under those sections. It does not specify how they are to be served, and it does not follow that service of both are governed by the service of summons statutes. Minor has suggested no good reason for drawing that conclusion.

■ Second, even assuming that minor's argument is correct, he ignores that Code of Civil Procedure section 1016 excludes both service of "summons or other process" and "any paper *to bring a party into contempt*"

---

*See footnote, *ante*, page 1184.

(italics added). An injunction does not bring a party into contempt. It simply sets forth the court-ordered restraints on the party's conduct. There is no contempt unless and until the injunction is violated.

*Morelli*, relied on by minor, is consistent with this conclusion. That case involved the question of the proper manner of serving an order to show cause regarding contempt for disobedience of a subpoena. (*Morelli, supra,* 11 Cal.App.3d at p. 834.) It was in that context that the Court of Appeal stated that, "The coupling in [Code of Civil Procedure] section 1016 of process to bring a party into contempt with service of summons indicates a legislative view that they are analogous. Thus, the 'paper to *bring* a party into contempt,' is to be considered as paper commanding an initial appearance . . . ." (*Morelli*, at p. 835, fn. omitted.) An injunction, unlike an order to show cause regarding contempt, is not a paper which brings a party into a contempt proceeding and commands an initial appearance.

■ Third, by its own terms, Code of Civil Procedure section 416.60 states only that "[a] *summons* may be served on a minor . . . ." (Italics added.) It does not include any other type of document.

■ Finally, we have found and been referred to no statute specifying how, or if, an injunction should be served. This may be because it need not be served. " 'To render a person amenable to an injunction it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice.' " (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1124 [60 Cal.Rptr.2d 277, 929 P.2d 596]; see *People v. Saffell* (1946) 74 Cal.App.2d Supp. 967, 979 [168 P.2d 497] ["It is also well settled that service of a restraining order or injunction need not be shown to establish a charge of contempt. One who, with knowledge of the order or injunction, does some act forbidden by it, and who comes within one of the classes of persons already mentioned who are subject to the order or injunction, is guilty of contempt."].)

■ We therefore conclude that there was no requirement that minor's parent be served. Delivery of the injunction to minor, which is undisputed, was adequate in that he had notice and knowledge of the injunction.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1184.

## DISPOSITION

The order appealed from is affirmed. On remand, we direct the juvenile court to correct its minute orders of May 12, 2009, and May 20, 2009, to reflect that Petition A was sustained and Petition B was dismissed.

Boren, P. J., and Ashmann-Gerst, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 2010, S184893.