Filed 1/16/14  In re S.N. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.N., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.N.,<br><br>    Defendant and Appellant. | E055823<br><br>(Super.Ct.Nos. INJ1100620 & FJ49461)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Charles Everett Stafford, Jr., Judge, and Robert J. Totten, Temporary Judge (pursuant to Cal. Const., art. VI, § 21).  Affirmed.

Cynthia A. Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia, Felicity Senoski, and Marissa A. Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant S.N. (Minor), a member of the Los Angeles criminal street gang Avenues, was observed by officers behind an apartment building in the company of another admitted gang member, in an area designated as a "Safety Zone" by a gang injunction. Minor attempted to flee from the officers and, when detained, was found to be in possession of a small souvenir bat, commonly used as a weapon by Avenues gang members. In a delinquency petition, Minor was charged with violating the gang injunction (Pen. Code, § 166, subd. (a)(4))[1] and possession of a billy club. (§ 22210.) The juvenile court found both allegations true following a court trial, and transferred the matter to Riverside County, Minor's legal residence. He was placed on probation and appealed the jurisdictional findings.

On appeal, minor argues (a) the juvenile court erred in not reaching Minor's constitutional challenges to the gang injunction; (b) the gang injunction is unconstitutionally vague and overbroad; (c) there is insufficient evidence to support the finding that minor was subject to the injunction; (d) the juvenile court erred in admitting the gang officer's opinion because he was not a properly qualified expert; (e) the admission of the gang officer's opinion violated Minor's confrontation rights; and (f) the cumulative effect of the errors requires reversal. We affirm.

## BACKGROUND

Los Angeles Police Department Officer Josue Osorio was assigned to the Northeast Division Gang Enforcement detail. His duties included gathering intelligence

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

on gang members, which he did by building a rapport with them, maintaining contact with them, staying up to date with their activities, and conducting gang investigations. His regular patrol covered the area claimed as turf by the Avenues street gang, as well as the Highland Park, Cypress Park, and Dog Town street gangs. The turf claimed by the Avenues covered certain areas of Los Angeles, which are also described in an injunction prohibiting members of the Avenues from engaging in certain activities in this area, which is referred to as a "Safety Zone."[2]

On January 18, 2012, at approximately 7:35 p.m., the officer was near 3407 Drew Street in the City of Los Angeles. This address was within the Avenues territory. At that time, the officer received a radio call regarding a gang group. When he arrived at the address, he observed Minor, with whom the officer had had prior contacts. Minor, who had previously admitted being a member of the Avenues, was in the company of O.A., also known to be a member of the Avenues street gang, at the rear of an apartment building at the Drew Street address, conversing or hanging out.

As Officer Osorio and his partner approached, Minor and O.A. looked in their direction and then ran away northbound to an adjacent apartment building, and hopped over a concrete wall. Officer Osorio observed a dark object in Minor's hands, which

[2] By order dated June 25, 2013, on the court's own motion we took judicial notice of the following documents from Los Angeles Superior Court case No. BC 287137: (1) Order to Show Cause re: Preliminary Injunction, entered in the minutes for January 29, 2003 (the "OSC"); (2) Order Granting Preliminary Injunction filed January 29, 2003 (the "Injunction"; Exh. No. 1 in the proceedings below); and (3) Request for Dismissal filed April 7, 2003. We additionally take judicial notice of the Record of Service of the Injunction (the "Record of Service") served on minor on July 2, 2010, which was Exhibit No. 2 in the proceedings below. (Evid. Code, § 452.)

Minor attempted to conceal. The officer followed Minor over the wall and detained him. O.A. was also detained. Minor was patted down for weapons by Officer Osorio's fellow officer, who recovered a souvenir miniature baseball bat.

From prior contacts with members of the Avenues street gang, Officer Osorio was aware that the Avenues used such souvenir bats as weapons against rival gang members, because they are easy to conceal. The officer was also familiar with the Injunction obtained by the City of Los Angeles prohibiting certain gang activities by members of the Avenues gang within the geographical area where Minor was detained. The Injunction, file-stamped April 7, 2003, prohibited members of the Avenues gang from driving, standing, sitting, walking, gathering or appearing anywhere in public view or anyplace accessible to the public, with any known member of the Avenues. The Injunction had been personally served on Minor in July 2010.

A juvenile court wardship petition was filed in Los Angeles County on January 20, 2012.[3] (Welf. & Inst. Code, § 602.) The petition alleged that Minor had committed acts which would have been crimes if committed by an adult, specifically, a misdemeanor violation of a court order, specifically the Order Granting Permanent Injunction in case No. BC 287137 (Pen. Code, § 166, subd. (a)(4), count 1), and felony possession of a billy

---

[3] An earlier petition was filed October 5, 2011, alleging vandalism (§ 594, subd. (a)), possession of aerosol paint (§ 594.1, subd. (e)(1)), and violation of a court order, specifically, the Injunction (§ 166, subd. (a)(4)). Minor admitted the first two counts, and the third count was dismissed in that matter. That case was transferred to Riverside County but Minor failed to appear for the disposition hearing. A warrant for Minor's arrest was outstanding in Riverside County at the time of the events alleged in the instant matter. The proceedings related to the earlier petition are not at issue in this case, so we do not discuss it further.

or blackjack (Pen. Code, § 22210, count 2). Following a court trial, the petition was sustained as to both counts and Minor was found to be a person described by Welfare and Institutions Code section 602. The court declared count 2 to be a misdemeanor. Subsequently, the case was ordered transferred to Riverside, as the county of Minor's legal residence, for a disposition hearing.

On March 2, 2012, the Riverside County Juvenile Court conducted the disposition hearing. The court adjudged Minor to be a ward of the court and placed his care, custody and control with the probation officer. Minor was released to the physical custody of his mother under terms of probation that included an order to stay away from certain areas of Los Angeles associated with the Avenues street gang.

On March 5, 2012, Minor timely appealed.

## DISCUSSION

### 1. *The Constitutionality of the Injunction Is Reviewable on Appeal*

Minor argues that the juvenile court erred by refusing to reach his constitutional arguments challenging the Injunction. He seeks reversal to remand the matter to the juvenile court for a determination of the issue. The People agree that the court should have reached the merits of this argument but assert that remand is unnecessary because the claims may be reached on appeal. We agree that Minor properly raised constitutional claims challenging the Injunction and that the juvenile court should have addressed them. (*People v. Gonzalez* (1996) 12 Cal.4th 804, 808.) However, as a pure issue of law, remand is unnecessary because the issue may be determined for the first time on appeal. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 884.)

On the merits, Minor argues that the Injunction's description of enjoined parties, and the nonassociation provision, are vague and overbroad. We disagree.

### a. Overbreadth

The United States Constitution does not protect a generalized right of social association; instead, it recognizes only a limited right to associate. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1110 (*Gallo*).) Specifically, the species of associations that fall under the protection of the First Amendment are those with intrinsic or intimate value, such as those attending the creation and sustenance of a family (*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 619), and those that are instrumental to forms of religious and political expression, such as are closely aligned with freedom of speech. (*Id.* at p. 622.)

Freedom of association, in the sense protected by the First Amendment, "does not extend to joining with others for the purpose of depriving third parties of their lawful rights." (*Madsen v. Women's Health Ctr.* (1994) 512 U.S. 753, 776.) Engaging in gang activities does not fall within the freedom of association protected by the First Amendment. (*Gallo*, *supra*, 14 Cal.4th at pp. 1110-1112.) "The right to associate . . . 'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.' [Citation.]" (*People v. Lopez* (1998) 66 Cal.App.4th 615, 627-628.)

"A statute that prohibits constitutionally protected conduct is overbroad and its enforcement may constitute a denial of due process. [Citation.]" (*In re Englebrecht* (1998) 67 Cal.App.4th 486, 497.) In *In re Englebrecht*, the court dealt with an injunction against the use or possession of pagers and beepers within a specified geographical area.

Because pagers and beepers have countless lawful, legitimate everyday uses, the injunction prohibited protected communications as well as possibly illicit communication among gang members, and was found to be overbroad. (*Id*. at p. 498.)

Injunctive relief may be granted against a criminal street gang. (*People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31, 39, citing *Gallo*, *supra*, 14 Cal.4th at p.1125.) Both the named gang organization and its members may be subject to the injunction. (*Totten*, at p. 44.) However, only the violation of an order "lawfully issued" is punishable as contempt. (*People v. Gonzalez*, *supra*, 12 Cal.4th at p. 816.) An order of contempt cannot stand if the underlying order is invalid. (*In re Misener* (1985) 38 Cal.3d 543, 558.)

The Avenues street gang's conduct within the "Safety Zone" of the Injunction fails to qualify as either of the two protected forms of association, insofar as the Avenues is not an association of individuals formed for the purpose of engaging in protected speech or religious activities. (*Gallo*, *supra*, 14 Cal.4th at p. 1111.) Nevertheless, an injunction or statute may be "'overbroad'" if in its reach it prohibits constitutionally protected conduct. (*Id*., at p. 1115, citing *Grayned v. City of Rockford* (1972) 408 U.S. 104, 114.)

Here, the Injunction prohibits only association by gang members with known gang members within a specified geographical area. There is no concern that protected speech or communicated conduct by anyone other than a member of the Avenues street gang

7

might be restricted by the Injunction, so Minor's claim of overbreadth is not cognizable.[4] (*Gallo*, *supra*, 14 Cal.4th at p. 1114.)

Minor also contends that the Injunction's description of enjoined parties must include the requirement that those subject to the Injunction must be acting in more than a nominal passive, inactive, or purely technical way. In *People ex rel. Totten v. Colonia Chiques*, *supra*, 156 Cal.App.4th 31, the defendants challenged a gang injunction, claiming the order did not define "active members." The court rejected the contention because the injunction enjoined Colonia Chiques, "'and its active members, as well as all persons who participate with or act in concert with the Colonia Chiques in more than a nominal, passive, inactive or purely technical way, as defined by applicable law.'" (*Id*. at pp. 49-50.) However, including language limiting application of the injunction to "active" gang members is not necessarily required.

An important consideration relevant to determining facial overbreadth is whether a statute (or, as here, an injunction) has been subject to a narrowing construction by the courts. (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1350-1351.) A statute may be interpreted narrowly to avoid overbreadth. (*In re Andre P. (1*991) 226 Cal.App.3d 1164, 1174, citing *San Francisco Unified School Dist. v. Johnson* (1971) 3 Cal.3d 937, 948.)

---

[4] It is true that "a 'prohibition against associating with "any other known [gang] member" might apply to a circumstance in which a defendant was engaged in one of the prohibited activities with someone known to the police but not known to [the defendant] to be a gang member.'" (*In re Vincent G*. (2008) 162 Cal.App.4th 238, 245.) In such a case, the prosecution must establish "a defendant's [or juvenile's] own knowledge of his associate's gang membership to meet its burden of proving conduct in violation of the injunction." (*Gallo*, *supra*, 14 Cal.4th at p. 1117.) That is a separate issue.

The gang injunction in the present case does not import the statutory language of section 186.22, subdivision (a), defining active participation in a criminal street gang. However, the injunction states that the court's finding that "Avenues is a criminal street gang as defined by section 186.22 (Street Terrorism Prevention and Enforcement ("STEP") and is a gang as defined for the purpose of a gang abatement injunction in *People v. Englebrecht* [(2001)] 88 Cal.App.4th 1236, 1258 [(*Englebrecht*)]." The Injunction thus incorporates by reference the statutory definitions and the decisional interpretations narrowing the definition of persons enjoined. The interpretations of the statute that have been imported into the Injunction avoid overbreadth.

More importantly, both Minor and O.A. are admitted members of the Avenues gang, so as to Minor, the injunction is constitutional. "[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional. [Citations.]" (*United States v. Raines* (1960) 362 U.S. 17, 21; *People v. Rodriguez* (1998) 66 Cal.App.4th 157, 167.)

### b. *Vagueness*

The underpinning of a vagueness challenge is the due process concept of "'fair warning.'" (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) A law that is void for vagueness not only fails to provide adequate notice to those who must observe its strictures, but also impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. (*People v. Barajas* (2011) 198 Cal.App.4th 748,

9

755, citing *Grayned v. City of Rockford*, *supra*, 408 U.S. at pp. 108-109; *Gallo*, *supra*, 14 Cal.4th at pp. 1115-1116.) When a gang area restriction has lacked an explicit knowledge requirement, appellate courts have required modifications. (*Barajas*, at p. 756.)

Minor claims the Injunction's description of enjoined parties is vague and overbroad because it is not limited to active gang members or nonmembers whose participation is "more than nominal, passive, inactive, or purely technical." The Injunction prohibits members of the Avenues street gang from the specific activities within the Safety Zone, namely: "Driving, standing, sitting, walking, gathering or appearing, anywhere in public view or anyplace accessible to the public, with any known member of Avenues." The Injunction is narrowly tailored to give notice of the precise activities prohibited, the precise area in which those activities are prohibited, and it requires knowledge of the gang member status of the persons with whom the person is not to associate. On its face, it is not vague or overbroad.

Minor's reliance on *Englebrecht*, *supra*, 88 Cal.App.4th 1236 is inapposite. In that case, the defendant was a party to the injunction action and appealed from the San Diego Superior Court order issuing an injunction against named members of the Posole gang from certain conduct. The injunction "enjoined the named defendants, the Posole gang, 'its members, agents, servants, and employees, and all persons acting under, in concert with, or from any of them,'" from the activities specified in the judgment. (*Id*. at pp. 1242-1243, fn. 2.)

On appeal, the defendant argued that the trial court incorrectly determined he was

10

a member of the Posole gang by using the wrong definition of active gang membership. (*Englebrecht*, *supra*, 88 Cal.App.4th at p. 1257.) In affirming the judgment granting the permanent injunction, the court rejected the defendant's argument that the definition of a gang member required that the defendant devote all or a substantial part of his time and efforts to the gang in order to meet the definition of a gang member. (*Id.* at pp. 1260-1261.) Instead, it concluded the defendant met the statutory definition.

That issue was not presented in this case: Minor had admitted he was a gang member on more than one occasion to the gang officer. This testimony, which was admitted without objection to prove Minor's gang membership, was what proved Minor's gang member status, not the language of the Injunction. It is not vague.

### 2. *Substantial Evidence Supports the Court's Finding that Minor Violated a Court Order*.

Minor argues that the evidence was insufficient to prove that Minor was subject to the Injunction, and that he violated it. He contends: (1) To prove the violation of the Injunction, the prosecutor was required to prove that Minor had notice of the Injunction, that he was a gang member at the time of the violation and thus subject to the Injunction, and that he did some act in violation of the Injunction within the Safety Zone. (2) Discrepancies between the prosecutor's oral description of the Injunction and the title of the judgment admitted into evidence as raising doubt that the Injunction admitted into evidence was the same Injunction with which Minor had been served. (3) There was insufficient evidence to prove Minor was an active gang member at the time of the violation. (4) There is insufficient evidence to prove he knew that O.A. was a gang

11

member for purposes of proving he violated the nonassociation provision.  We disagree.

### a.  *Standard of Review*

Because the standard of proof in juvenile proceedings involving criminal acts is the same as the standard applicable in adult criminal cases, the principles of appellate review applicable in adult criminal cases are applicable to review of the sufficiency of evidence admitted in a juvenile proceeding.  (*In re Roderick P.* (1972) 7 Cal.3d 801, 809; *In re Z.A.* (2012) 207 Cal.App.4th 1401, 1424.)  In reviewing a sufficiency of evidence claim, our role is limited; we determine whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Smith* (2005) 37 Cal.4th 733, 738-739; *In re Z.A.*, at pp. 1424-1425.)

On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  Reversal is unwarranted unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conviction.  (*People v. Mason* (2006) 140 Cal.App.4th 1190, 1199.)

### b.  *The Injunction*

Minor was charged with violating a court order under section 166, subdivision (a)(4).  The order is described in count 1 as "ORDER GRANTING PERMANENT INJUNCTION CASE #BC 287137."  This order, a gang injunction, was filed on April 7,

12

2003, in Los Angeles Superior Court case No. BC 287137.[5] At trial, a copy of the Injunction was admitted into evidence as Exhibit No. 1.

The Injunction described a "Safety Zone" in which the criminal street gang, the Avenues, was found, by clear and convincing evidence, to create a criminal nuisance. The Drew Street address where Minor was arrested was within that Safety Zone. The Injunction included specified prohibitions under item n1, including item 1 (a), which prohibited the Avenues, "its members, agents, servants, employees, and all person acting under, in concert with, for the benefit of, at the direction of, or in association with them or any of them," from "[d]riving, standing, sitting, walking, gather or appearing, anywhere in public view or anyplace accessible to the public, with any known member of Avenues. . . ."

### c.     *Substantial Evidence Supported the True Finding*

In order for a defendant to be guilty of violating section 166, subdivision (a)(4), the prosecution was required to prove:  (1) a court had lawfully issued a written order; (2) the defendant (or Minor) knew about the order and its contents; (3) the defendant had the ability to follow the court order; and (4) the defendant willfully violated the court order. (CALCRIM No. 2700; *People v. Greenfield* (1982) 134 Cal.App.3d Supp. 1, 4.)  Thus, "[o]ne who, with knowledge of the [lawful] order or injunction, does some act forbidden by it, and who comes within one of the classes of persons already mentioned who are

---

**5** The injunction was also published on the website of the Los Angeles City Attorney's Office.  (http://www.lapdonline.org/gang_injunctions, as of June 18, 2013.)

13

subject to the order or injunction, is guilty of contempt." (*People v. Saffell* (1946) 74 Cal.App.2d Supp. 967, 979.)

Regarding the first element, the Avenues injunction of 2003 is a lawful written order. As discussed in the previous section, it was not overbroad or vague or void for lack of jurisdiction or authority. Minor's arguments about discrepancies between the oral description of the Injunction and the actual court order (which we discuss in greater depth below) notwithstanding, no evidence was introduced to show that the Injunction was no longer in effect, or that the issuing court lacked jurisdiction to make the order. We conclude the Injunction was a lawfully issued a written order.

The second element requires that Minor knew about the order and its contents. The testimony established Minor was personally served with a copy of the Injunction, although section 166, subdivision (a)(4), does not require proof of service to establish a charge of contempt, only knowledge of the order or injunction. (*In re Orlando C.* (2010) 186 Cal.App. 4th 1184, 1191; *People v. Saffell*, *supra*, 74 Cal.App.2d Supp. at p. 979.) Minor testified in his own defense and did not deny knowledge of the Injunction, although ignorance of the order would have been a defense to the charge. This element was met.

The third element requires that Minor have the ability to follow the court order. Although no direct evidence was offered on this element, no evidence suggests he did not have the ability to follow the order. Insofar as inability to follow the order would be a defense to a charge of violating a court order, the absence of any defense evidence on this point supports an inference that he did have the ability to follow the Injunction. More

14

importantly, because Minor's legal residence was in Riverside County, a geographical area outside the Safety Zone covered by the Injunction, he was fully capable of following the order simply by staying at home.  Since Minor does not argue that this element was wanting, we will not address it further.

The fourth element requires a showing that Minor willfully violated the court order.  Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is sufficient to support a conviction.  (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.)  Someone commits an act *willfully* when he or she does it willingly or on purpose.  (CALCRIM No. 2700.)   The term "willful" means "simply a purpose or willingness to commit the act. . . ."  (§ 7, subd. (1); *People v. Lara* (1996) 44 Cal.App.4th 102, 107.)

Here, Minor's legal residence was in Riverside County, but he was in Los Angeles within the Safety Zone.  There is no evidence he was taken involuntarily to Los Angeles, and his testimony about visiting his girlfriend (his "Baby Momma") and playing baseball with two younger cousins supports an inference that Minor was in the Safety Zone volitionally and intentionally.  Further, Minor was observed "hanging out" with O.A.  This was a volitional act, not an accidental or involuntary one, committed with knowledge of the terms of the injunction.

Minor raises additional points to support his argument that his conduct did not violate the Injunction.  For instance, he argues there is insufficient evidence that he was an active gang member.  This is incorrect.  Minor previously admitted being a gang member on multiple occasions to the gang officer, so there was proof that he was a gang

15

member. As an admission of a party, the statement was not made inadmissible by the hearsay rule, whether the gang officer qualified as an expert or not. (Evid. Code, § 1220.) His admissions established he was a gang member who was enjoined by the judgment granting the gang injunction.

Next, Minor argues that there are discrepancies between the documentary exhibits and the oral description thereof by the prosecutor and the gang officer, such that the Injunction admitted into evidence may or may not be the same Injunction in force on the date of the alleged violation, or may or may not be the same Injunction that was served on Minor or that he was subject to the Injunction introduced in evidence. He also argues there was no evidence that he had knowledge that O.A. was a gang member.

As to the discrepancies relating to the exhibits, we conclude the evidence adequately proved the existence of the Injunction as well as Minor's knowledge of its terms. It is true that the prosecutor orally misdescribed the Injunction as a "preliminary injunction," and the gang officer orally misstated the date of the Injunction as being April 20, 2003, instead of April 7, 2003, the date reflected in the file stamp on the challenged Injunction. However, Exhibit No. 1 was offered by the People to prove the terms of the court order that Minor was charged with violating, and the gang officer identified Exhibit No. 1 as the Injunction at issue. Any oral misdescriptions or discrepancies are immaterial.

The prosecution proffered an Injunction into evidence which bore the same case number as the order or judgment described in the allegations of the petition. Further, witnesses identified the exhibit as the gang injunction which was in effect, and with

16

which the minor was served. Irrespective of what it was called, it proved the existence and terms of the gang injunction.

Minor also points to a discrepancy in the Record of Service, which refers to an eight-page document served on Minor, differing from the six-page Injunction offered into evidence, as creating doubt that Exhibit No. 1 is the same Injunction. The Record of Service is not an official document; it merely memorialized the act of providing Minor with a copy of the Injunction by Officer Vargas. Officer Vargas testified that he served the Injunction, which he identified as Exhibit No. 1, on Minor.

As to the discrepancy in the pagination of the permanent injunction, we note that the nonassociation provision found in the Injunction prohibited activities "with any known member of Avenues including but not limited to *those members identified on pages 6 and 7 herein . . . .*" (Italics added.) It is apparent that the omitted pages, which also were omitted from the published version of the Injunction found on the Los Angeles City Attorney's website, simply listed the names of gang members who were individually named in the original civil action, filed to obtain the gang injunction. Those names became irrelevant when the permanent injunction against the gang was granted. While it would have been preferable for this to have been explained in the trial court, it does not undermine our confidence that the injunction, which was recorded as a judgment, published on the Los Angeles City Attorney's website, and personally served on Minor, is the same judgment. The fact that the Record of Service reflects that Minor was served with the original order, including pages 6 and 7, does not defeat this conclusion.

Further, it is irrelevant that the names of the gang members who were named as

17

parties in the original action were deleted from the final judgment. Nonparties to an injunction action are bound by the injunction if they have knowledge of it. (*Berger v. Superior Court* (1917) 175 Cal. 719, 721-722; see also *Gallo*, *supra*, 14 Cal.4th at p. 1124.) The Injunction was identified by Officers Osorio and Vargas, and there is undisputed evidence that Minor was served with a copy of it. The discrepancies asserted by Minor do not affect the court's finding that the elements of section 166 were met.

Minor's final claim is that the prosecution failed to prove that Minor know O.A. was a gang member. There was no direct evidence Minor was aware that O.A. was a member of the same gang to which Minor admitted membership. However, O.A. was an admitted member of the same gang of which Minor was a member, and was in his company within the Safety Zone at the time of the arrest. As the trier of fact, the court could deduce and infer that Minor knew of O.A.'s gang status since both were members of the same gang and were casually hanging out together, while Minor was in possession of the Avenues' weapon of choice, the miniature bat. Minor had the opportunity to deny knowledge of O.A.'s gang membership when he testified in his own defense, but he did not. Instead, he limited his testimony to matters concerning the charge of possessing a billy club.

The fact that O.A. fled with Minor at the approach of the gang officer is another circumstance supporting a reasonable inference that Minor, being familiar with O.A., was also familiar with his status in the Avenues. (See *People v. Prieto* (2003) 30 Cal.4th 226, 245 [although record contained no direct evidence that the defendant and a female he claimed was his spouse were not married, circumstances such as the age of the female

(15), the fact she lived at home and had a boyfriend who was not the defendant, supported the court's finding].) The juvenile court properly inferred that Minor was aware of O.A.'s gang status.

3. ***Officer Osorio's Opinion that O.A. Was An Active Gang Member Was Admissible Where It Was Grounded on O.A.'s Declaration Against Penal Interest***.

Minor argues that the juvenile court improperly allowed Officer Osorio to testify that O.A. was an active gang member, because the officer was not qualified as an expert. We disagree because: (1) Officer Osorio was qualified as an expert by the trial court and thus authorized to render an opinion, and (2) the evidence of O.A.'s gang membership was established by O.A.'s declarations against his own penal interests, and was admissible even if offered by a lay witness. Where a defendant challenges on appeal the admissibility of evidence, the appropriate standard of review is abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 45; *People v. Bradley* (2012) 208 Cal.App.4th 64, 84.)

a. ***Officer Osorio Was Found To Be, And Did Qualify As, An Expert***.

During the court trial, Minor's counsel objected to opinion testimony by Officer Osorio on the ground the officer did not qualify as an expert. The juvenile court overruled the objection, and found that Officer Osorio had the specialized knowledge to testify about the Avenues and their territory. Although the court stated the officer was not a "formal expert," he did have "knowledge beyond the norm of an average citizen." The court ruled the officer's opinion "comes in but it goes to what weight we do put on

19

the opinion that Avenues gangs members [*sic*] can carry these bats as weapons or they do so."

Minor's counsel apparently misunderstood the juvenile court's finding, because counsel went on to state that, "Insofar as he is not being treated as an expert, I move to strike as lacks foundation, improper opinion and hearsay statements that were admitted into evidence under the guise of him being an expert and those statements forming the basis of his opinion." The objection was overruled. The above statement by the court shows that it did determine the witness to qualify as an expert. We agree with this determination.

A person is qualified to testify as an expert if the person has "special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a); *People v. Hill* (2011) 191 Cal.App.4th 1104, 1118 (*Hill*).) The determination that a witness qualifies as an expert and the decision to admit expert testimony are within the discretion of the trial court and will not be disturbed without a showing of manifest abuse. (*People v. Mendoza* (2000) 24 Cal.4th 130, 177; *Hill*, at p. 1118.) Error regarding a witness's qualifications as an expert will be found only if the evidence shows that the witness clearly lacks qualification as an expert. (*Hill*, at p. 1118, italics omitted, citing *People v. Farnum* (2002) 28 Cal.4th 107, 162.)

A gang expert may testify about the culture and habits of criminal street gangs (*People v. Gardeley* (1996) 14 Cal.4th 605, 617 (*Gardeley*)), and may offer an opinion that a person is a gang member. (*People v. Champion* (1995) 9 Cal.4th 879, 921-922.)

20

Gang experts may testify concerning the modus operandi of the gang and its members. (*People v. Prince* (2007) 40 Cal.4th 1179, 1223, citing *People v. Jenkins* (1975) 13 Cal.3d 749, 755 [officer testified as expert that tools found in defendant's car were commonly used in burglaries].)

Here, Officer Osorio had been assigned to the gang detail for approximately four years, during which time his primary job was to gather intelligence on gang members, build a rapport with them, stay current on gang activities, and conduct gang investigations in the area where the Avenues street gang claimed territory, as well as the Highland Park, Cypress Park, and Dog Town street gangs. Officer Osorio had the requisite specialized knowledge and experience to support a finding he was an expert, capable of rendering an opinion that O.A. was a member of the Avenues street gang based on O.A.'s admissions. There was no error in admitting his opinion that O.A. was a gang member.

> ### b. O.A.'S Statements to Officer Osorio Admitting Membership In The Avenues Criminal Street Gang Constituted Declarations Against O.A.'s Penal Interests, Which Were Admissible Even if Officer Osorio Had Not Been Qualified As An Expert.

O.A. was shown to be an active gang member by his prior admissions of gang membership to the gang officer. (Evid. Code, § 1230.) These statements were admissible as declarations against O.A.'s penal interests. "In order for a statement to qualify as a declaration against penal interest the statement must be genuinely and specifically inculpatory [to] the declarant; this provides the 'particularized guarantee of

trustworthiness' or 'indicia of reliability' that permits its admission in evidence without the constitutional requirement of cross-examination." (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 329.) Where a "statement falls within this hearsay exception [it] also satisfies the requirements of the confrontation clause. [Citations.]" (*Id.* at pp. 329-330; see also *People v. Fuentes* (1998) 61 Cal.App.4th 956, 965-966.)

The juvenile court ruled that the evidence of O.A.'s admission to the officer was admissible as foundation for the officer's opinion. Minor complains that the gang officer could not base his opinion that O.A. was a gang member on O.A.'s hearsay. However, the admissions fell under an exception to the hearsay rule. (Evid. Code, § 1230.) A witness is not required to qualify as an expert to be permitted to testify about a declaration against the declarant's penal interests. Thus, the statements were admissible whether Officer Osorio qualified as an expert or not.

The fact the juvenile court did not discuss the admissibility of O.A.'s admission of gang membership does not preclude our analysis of the ruling under this theory. It is well settled that """"a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.""""" (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1448.) """""If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion."""""" (*Ibid.*, citing *People v. Zapien* (1993) 4 Cal.4th 929, 976.)

Under either theory, the ruling by the court was correct.

***4.*** *Officer Osorio's Testimony Regarding the Avenues' Use of Miniature Bats Did Not Violate Minor's Confrontation Rights.*

Minor argues that the opinion testimony of Officer Osorio violated the Confrontation Clause because the officer relied on out-of-court testimonial statements of gang members. We disagree.

Experts may testify as to their opinions on relevant matters and, if questioned, may relate the information and sources on which they relied in forming those opinions, including hearsay. (*Gardeley*, *supra*, 14 Cal.4th at pp. 618-619; *People v. Thomas* (2005) 130 Cal.App.4th 1202, 1209-1210 [Fourth Dist., Div. Two] (*Thomas*); *People v. Sisneros* (2009) 174 Cal.App.4th 142, 153.) "Expert testimony is admissible to prove custom and usage in an industry." (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114, citing *Ecco-Phoenix Elec. Corp. v. Howard J. White* (1969) 1 Cal.3d 266, 271.) The culture and habits of gangs are matters that are "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact" (Evid. Code, § 801, subd. (a)), so "'opinion testimony from a gang expert, subject to the limitations applicable to expert testimony generally, is proper.'" (*Thomas*, at p. 1210.)

The rule permitting experts to testify to their opinions and the bases of their opinions is not undermined by the holding of *Crawford v. Washington* (2004) 541 U.S. 36. (*Thomas*, *supra*, 130 Cal.App.4th at p. 1210; *People v. Sisneros, supra,* 174 Cal.App.4th at p. 153.) The rationale for this conclusion is that an expert is subject to cross-examination about his or her opinions, and the materials on which the expert bases his or her opinions are not elicited for the truth of the matter asserted. (*Sisneros,* at p.

153; see also *Thomas,* at p. 1210; *People v. Dean* (2009) 174 Cal.App.4th 186, 193.) The confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (*Crawford v. Washington*, *supra*, 541 U.S. at p. 59, fn. 9, citing *Tennessee v. Street* (1985) 471 U.S. 409, 414.)

In *Thomas*, the gang expert testified to his opinion that the defendant was a gang member based on his conversations with other gang members, through which "casual, undocumented conversations with other gang members" that the defendant was a gang member. (*Thomas*, *supra*, 130 Cal.App.4th at p. 1208.) On appeal, the defendant claimed that his right to confront witnesses was violated by the admission of the gang expert's testimony regarding the conversations with other gang members. This court rejected the notion that the defendant's right of confrontation was violated because the conversations with other gang members were mentioned only as a basis for the officer's opinion that defendant was a gang member. (*Id.* at p. 1210.)

Other courts have followed *Thomas* in holding that hearsay in support of expert opinion is not the sort of testimonial hearsay, the use of which *Crawford* condemned. (See *Hill*, *supra*, 191 Cal.App.4th at p. 1137 [expert testimony of ongoing gang rivalry and defendant's gang purpose];[6] *People v. Sisneros, supra,* 174 Cal.App.4th at p. 153 [expert's testimony that shooting was consistent with Mexican Mafia protocol for witness intimidation obtained through debriefings of gang members]; *People v. Ramirez* (2007)

---

[6] The court in *Hill* disagreed with the analysis of *Thomas* but followed it because our holding in *Thomas* was based on *Gardeley*, *supra*, 14 Cal.4th 605, which the *Hill* court was required to follow. (*Hill*, *supra*, 191 Cal.App.4th at p. 1127, citing *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

24

153 Cal.App.4th 1422, 1426-1427 [hearsay as basis for expert's opinion on predicate crimes].)

The expert testimony regarding the custom and practice of Avenues gang members, who used souvenir miniature bats as weapons against rival gang members, was the proper subject of expert testimony. In *People v. Olguin* (1994) 31 Cal.App.4th 1355, the reviewing court affirmed the admission of gang expert testimony, based on his interviews with gang members and reviews of police reports, to his opinion that the Southside gang would retaliate violently if its graffiti had been crossed out. (*Id.* at pp. 1370-1371.)

Here, Officer Osorio's testimony described the gang culture of the Avenues street gang, including their preferred use of the miniature bat as a weapon of choice against rival gang members. This testimony, going to the culture and habits of the criminal street gang, was admissible. (*Gardeley*, *supra*, 14 Cal.4th at p. 617.) There was no violation of Minor's right of confrontation and no error in admitting the testimony.

## 5. *Lacking Any Error, There is No Cumulative Error Requiring Reversal.*

Having found no errors, there is no cumulative error.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

I concur:

CODRINGTON
J.

King, J., Concurring.

I concur with the majority's result. I write separately because I disagree with its generalized discussion of whether Officer Josue Osorio's recitation of the matters he relied upon to form his opinion were effectively offered and considered for their truth.

Relying on *People v. Gardeley* (1996) 14 Cal.4th 605, *People v. Thomas* (2005) 130 Cal.App.4th 1202 [Fourth Dist., Div. Two], and *People v. Sisneros* (2009) 174 Cal.App.4th 142, the majority concludes that when an expert on direct examination relays to the jury the information relied upon by the expert in forming his or her opinion a defendant's confrontation rights are not implicated because the information relayed to the jury is not submitted for the truth of the matter stated therein.

I disagree with this generalized broad-brush approach. I believe it contrary to the discussion in *People v. Hill* (2011) 191 Cal.App.4th 1104 (*Hill*) and the opinions of a majority of United States and California Supreme Court justices as recently expressed in *Williams v. Illinois* (2012) ___ U.S. ___ [132 S.Ct. 2221] (*Williams*) and *People v. Dungo* (2012) 55 Cal.4th 608 (*Dungo*).

I begin with *Hill*. At issue was basis testimony of a gang expert. There, the court pointed out that *Gardeley* and *Thomas* were based on the "implied assumption that the out-of-court statements *may help the jury evaluate the expert's opinion without regard to the truth of the statements*. Otherwise, the conclusion that the statements should remain free of *Crawford*[1] review because they are not admitted for their truth is nonsensical.

_____

1 *Crawford v. Washington* (2004) 541 U.S. 36.

But this assumption appears to be incorrect." (*Hill, supra,* 191 Cal.App.4th at pp. 1129-1130, italics added.)  This incorrect assumption, the *Hill* court pointed out, masks violations of the hearsay rule and the confrontation clause.  (*Id.* at pp. 1130-1132.)

To illustrate the point, *Hill* discussed *People v. Goldstein* (2005) 6 N.Y.3d 119 [810 N.Y.S.2d 100, 843 N.E.2d 727] (*Goldstein*).  There, a forensic psychiatrist, in testifying as an expert for the prosecution, testified on direct examination to out-of-court statements to support her opinion that the defendant was not insane when he pushed a woman in front of a subway train.  (*Hill, supra,* 191 Cal.App.4th at p. 1130.)  The statements consisted of hearsay from a security guard and an acquaintance of the defendant that, prior to the murder, a woman who looked remarkably like the murder victim had "'sexually frustrated'" the defendant.  (*Id.* at p. 1130, fn. 15.)  *Goldstein* concluded that the admission of the out-of-court statements as basis evidence violated the defendant's confrontation rights.  (*Goldstein, supra,* at p. 730.)  In rejecting the prosecution's argument that the statements were not admitted for their truth but only to assist the jury in evaluating [the expert's] opinion, the *Goldstein* court reasoned:  "We find the distinction the People make unconvincing.  We do not see how the jury could use the statements . . . to evaluate [the expert's] opinion without accepting as a premise either that the statements were true or that they were false.  Since the prosecution's goal was to buttress [the expert's] opinion, the prosecution obviously wanted and expected the jury to take the statements as true. . . . *The distinction between a statement offered for its truth and a statement offered to shed light on an expert's opinion is not meaningful in this*

*context*." (*Id.* at pp. 732-733, italics added.) *Hill* agreed with *Goldstein*, noting that "where basis evidence consists of an out-of-court statement, the jury will often be required to determine or assume the truth of the statement in order to utilize it to evaluate the expert's opinion." (*Hill, supra,* at p. 1131, fn. omitted.)[2]

In *Williams* and *Dungo*, five of the nine United States Supreme Court justices and six of the seven state Supreme Court justices, respectively, agreed that out-of-court statements, even when offered solely as basis evidence to support an expert opinion, may effectively be offered for their truth. (*Williams, supra,* 132 S.Ct. at pp. 2255-2264 (conc. opn. of Thomas, J.); *id.* at pp. 2264-2277 (dis. opn. of Kagan, J., joined by Scalia, J., Ginsburg, J., and Sotomayor, J.); *Dungo, supra*, 55 Cal.4th at pp. 621-627 (con. opn. of Werdegar, J., joined by Cantil-Sakauye, C. J., Baxter, J., and Chin, J.); *id.* at pp. 633-649 (dis. opn. of Corrigan, J., joined by Liu, J.).)

---

[2] Further, CALCRIM No. 332, the standard jury instruction on expert opinion testimony, instructs the jury it "must decide whether information on which the expert relied was true and accurate," and it may "disregard any opinion" it finds "unbelievable, unreasonable, or unsupported by the evidence." (See Pen. Code, § 1127b [sua sponte instructions required on expert testimony].) The instruction reflects the accepted wisdom that "any expert's opinion is only as good as the truthfulness of the information on which it is based." (*People v. Ramirez* (2007) 153 Cal.App.4th 1422, 1427.)

*Williams* arose from the kidnap, rape, and robbery of a woman in Chicago. Semen from a vaginal swab taken from the rape victim was sent to Cellmark Diagnostics Laboratory (Cellmark) for DNA analysis, and Cellmark produced a report containing a DNA profile of the semen donor. The defendant, Williams, had not been identified as a suspect in the crimes at the time the Cellmark DNA profile was generated. Williams was later arrested on unrelated charges, and the state crime lab generated a DNA profile based on his blood sample. Thereafter, state crime lab analyst Sandra Lambatos conducted a computer search of DNA profiles in the state police database to determine whether any of them matched the Cellmark DNA profile of the semen donor in the rape case. Lambatos found that the Cellmark DNA profile matched Williams's DNA profile. The victim then identified the defendant as her attacker in a police lineup. (*Williams, supra,* 132 S.Ct. at p. 2229.)

At Williams's bench trial for aggravated criminal sexual assault, kidnapping, and robbery, Lambatos answered "yes" when asked whether the two DNA profiles matched, over the defense counsel's objection for "lack of foundation." (*Williams, supra,* 132 S.Ct. at pp. 2229-2230.) The Cellmark report containing the DNA profile of the semen donor was not admitted into evidence. (*Id*. at p. 2230.) Nor did Lambatos quote from or read from the Cellmark DNA report or identify it as the source of any of her opinions. (*Ibid*.) Williams was found guilty and the judgment was upheld on appeal by the state Court of Appeals and Supreme Court. (*Id*. at p. 2231.) The question presented to the high court in *Williams* was "'the constitutionality of allowing an expert witness to discuss

4

others' testimonial statements if the testimonial statements were not themselves admitted as evidence.'" (*Id.* at p. 2233.) At issue was whether Lambatos's testimony that the two DNA profiles matched violated the defendant's confrontation rights, and whether the underlying Cellmark report containing the DNA profile of the donor of the semen found on the vaginal swabs, was testimonial. (*Id.* at p. 2227.)

In addressing the issue of whether the basis testimony of expert Lambatos was offered for the truth of the matters relied on, a four justice plurality, consisting of Justices Alito, Kennedy, Breyer, and Chief Justice Roberts, indicated that it was not. As reasoned, the confrontation clause "has no application to out-of-court statements that are not offered to prove the truth of the matter asserted," including statements "related" by an expert witness "solely for the purpose of explaining the assumptions" on which the expert's opinion is based. (*Williams, supra,* 132 S.Ct. at p. 2228.) Such statements "are not offered for their truth and thus fall outside the scope of the Confrontation Clause." (*Ibid.*) The plurality observed that, "[f]or more than 200 years, the law of evidence has permitted the sort of testimony" given by Lambatos, and "[m]odern rules of evidence continue to permit experts to express opinions based on facts about which they lack personal knowledge . . . ." (*Id.* at pp. 2228, 2233-2235.) "The truth of Lambatos' testimony, properly understood, was not dependent on the truth of any predicate facts," including whether the Cellmark report was true and accurate. (*Id.* at p. 2239.) Whether the Cellmark report was true and accurate, and scientifically reliable, went to the weight of Lambatos's opinion that the two DNA profiles matched, not its admissibility. (*Id.* at

5

pp. 2239-2240.) Furthermore, the foundational fact of the truth of the Cellmark report and its scientific reliability was shown by circumstantial evidence, including chain of custody evidence. (*Id*. at pp. 2238-2239.)

In a concurring opinion, Justice Thomas agreed that the disclosure of Cellmark's out-of-court statements through the expert testimony of Lambatos did not violate the confrontation clause, but only because the statements "lacked the requisite 'formality and solemnity' to be considered '"testimonial"'" for purposes of the Confrontation Clause." (*Williams, supra,* 132 S.Ct. at pp. 2255, 2259-2260 (conc. opn. of Thomas, J.).) Justice Thomas disagreed with the plurality's conclusion that the underlying Cellmark report was not admitted for its truth. In his view, "there was no plausible reason for the introduction of Cellmark's statements other than to establish their truth." (*Id*. at p. 2256.) He remarked that the rules of evidence—that basis evidence to support an expert opinion not offered for its truth—should not "so easily trump a defendant's confrontation right." (*Ibid*.) He concluded that "statements introduced to explain the basis of an expert's opinion are not introduced for a plausible nonhearsay purpose. There is no meaningful distinction between disclosing an out-of-court statement so that the factfinder may evaluate the expert's opinion and disclosing that statement for its truth." (*Id*. at p. 2257.) Justice Thomas also took issue with the plurality's claim that there was a long-standing historical practice of exempting expert basis testimony from "the rigors" of the confrontation clause. (*Ibid*.) He warned that "[t]oday's holding" would "reach beyond scientific evidence to ordinary out-of-court statements," including interviews with third

parties, upon which experts commonly rely in forming their opinions. (*Id*. at p. 2259, citing *Goldstein, supra,* 843 N.E.2d at pp. 729-730.)

Justice Kagan wrote a dissenting opinion, joined by Justices Scalia, Ginsburg, and Sotomayor. (*Williams, supra,* 132 S.Ct. at pp. 2264-2277 (dis. opn. of Kagan, J.).) They agreed with Justice Thomas that the Cellmark report, conforming the DNA profile produced from the semen taken from the rape victim's vaginal swab was effectively admitted for its truth through the "conduit" testimony of Lambatos. (*Id*. at pp. 2266-2267.) They viewed the case as "functionally identical" to *Bullcoming v. New Mexico* (2011) 564 U.S. ___ [131 S.Ct. 2705] and *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, which involved out-of-court scientific reports impermissibly introduced for their truth through the "'surrogate'" testimony of experts, in violation of the defendants' right to confront the analysts who prepared the testimonial reports. (*Williams, supra,* at p. 2266.) Like Justice Thomas, the four dissenters agreed the Cellmark report "ha[d] no purpose separate from its truth." (*Id.* at p. 2269.)

The dissenting justices in *Williams* disagreed with the plurality's claim that Lambatos merely "assumed" the Cellmark DNA profile came from the victim's vaginal swabs. (*Williams, supra*, 132 S.Ct. at p. 2270 (dis. opn. of Kagan, J.).) To the contrary, they pointed out that Lambatos "affirmed, without qualification," that the report contained a male DNA profile found in the semen taken from the victim's vaginal swabs. (*Ibid*.) And Lambatos's description of the report was offered for its truth because "that is all such 'basis evidence' can be offered for; . . . the only way the factfinder could

7

consider whether [the Cellmark report] supported her opinion (that the DNA on [the victim's] swabs came from Williams) was by assessing the statement's truth." (*Id*. at p. 2271 (dis. opn. of Kagan, J.).) They criticized the plurality's "not-for-the-truth rationale" as an "abdication to state-law labels," and noted that the high court did "not typically allow state law to define constitutional requirements." (*Id*. at p. 2256 (conc. opn. of Thomas, J.); *id*. at p. 2272 (dis. opn. of Kagan, J.).)

In *Dungo*, forensic pathologist Dr. Robert Lawrence testified that after reviewing an autopsy report prepared by a nontestifying pathologist, Dr. George Bolduc, and photographs taken at the autopsy, the alleged murder victim died from asphyxia caused by strangulation. (*Dungo, supra,* 55 Cal.4th at pp. 613-614.) In support of his opinion, Dr. Lawrence described the condition of the victim's body based on the autopsy report and photographs, which were not admitted into evidence. (*Id*. at pp. 614-615.) Dr. Lawrence did not describe Dr. Bolduc's opinion of the cause of the victim's death as stated in the autopsy report; he only gave his "independent opinion" of the cause of death as a forensic pathologist. (*Ibid*.) Nor did Dr. Lawrence say whether his opinion of the cause of death was based solely on the autopsy report, the autopsy photographs, or a combination of the two. (*Ibid*.) The defendant was found guilty of second degree murder. (*Id*. at p. 615.)

The majority opinion, authored by Justice Kennard, did not address whether the basis testimony of Dr. Lawrence was offered for its truth. Justice Werdegar's concurring opinion, signed onto by Chief Justice Cantil-Sakauye and Justices Baxter and Chin, while

8

finding the basis evidence relied upon by Dr. Lawrence was not testimonial, indicated "Dr. Bolduc's observations were introduced for their truth, and since Dr. Bolduc was not shown to be unavailable and had not been subject to prior cross-examination on this matter by defendant, his statements, were they testimonial, would have been inadmissible under *Crawford*." (*Dungo, supra,* 55 Cal.4th at p. 627 (conc. opn. of Werdegar, J.).)

A dissenting opinion authored by Justice Corrigan and joined by Justice Liu, concluded that Dr. Lawrence's basis testimony did violate the defendant's right to confrontation. As such, they necessarily concluded that the basis testimony was offered for its truth. As indicated, "[t]here are of course, many instances in which out-of-court statements are not offered for their truth. The long-standing rule that unless a statement is admitted for its truth it is not hearsay remains unchanged. The question is whether a statement *is* admitted for its truth. When an expert witness treats as factual the contents of an out-of-court statement, and relates as true the contents of that statement to the jury, a majority of the high court in *Williams* . . . rejects the premise that the out-of-court statement is not admitted for its truth." (*Dungo, supra,* 55 Cal.4th at p. 635, fn. 3 (dis. opn. of Corrigan, J.).)

This majority consensus on the federal and state Supreme Courts has serious implications for confrontation clause jurisprudence. It means this court's 2005 decision in *Thomas* and our colleagues' decision in *Sisneros* is no longer good law. (See *People v. Valadez* (2013) 220 Cal.App.4th 16, 32 [noting *Thomas is* "likely" to be "significantly

9

undermined" by the United States and California Supreme Courts as currently constituted].) [3]

In fact, in this case, the majority's discussion that the expert's basis evidence was not offered and relied upon for its truth is belied by the record. Defendant was charged with possession of a billy, a violation of Penal Code section 22210, specifically an 8" to 12" Los Angeles Dodger blue souvenir bat. Clearly, possession of a Dodger souvenir bat is not a crime. As stated in *People v. Fannin* (2001) 91 Cal.App.4th 1399: "Intent to use a weapon is not an element of the crime of weapon possession. . . . However, if the object is not a weapon per se, but an instrument with ordinary innocent uses, the prosecution must prove that the object was possessed *as a weapon*. The only way to meet that burden is by evidence 'indicat[ing] that the possessor *would use* the object for a dangerous, not harmless, purpose.' [Citation.]" (*Id*. at p. 1404.)

Here, the only testimony relating to use of the souvenir bat as a weapon was provided by Officer Osorio:

"[PROSECUTOR:] Can you describe what the baseball, mini-baseball bat or billy club looked like?

"[THE WITNESS:] It's a small wooden bat, blue in color, it's shorter than arms length, it was approximately 12 inches, eight to 12 inches long.

"THE COURT: I assume it's one of those souvenir bats?

---

[3] *Gardeley* was decided eight years before *Crawford v. Washington, supra,* 541 U.S. 36. Further, the court was not presented with and did not discuss nor decide whether the expert's testimony violated the defendant's right to confrontation.

"THE WITNESS:  Yes.  [¶]  . . .  [¶]

"[PROSECUTOR:]  Can you describe briefly for me any experience you have with Avenues gang members using billies?

"[DEFENSE COUNSEL]:  Objection, relevance.

"[PROSECUTOR]:  It's relevant as to the weapon being used as a weapon rather than just merely a souvenir.

"THE COURT:  Overruled.

"THE WITNESS:  Okay.  I have had various contacts with other Avenues gang members, and during those contacts a lot of the times we have casual conversations where they admitted that they use —

"[DEFENSE COUNSEL]:  Objection . . . .  [¶]  . . .  [¶]

"THE COURT:  Overruled.  It goes to the opinion as to what the purpose of this devi[c]e was in your client's hands.  [¶]  . . .  [¶]

"THE WITNESS:  Among various occasions they do state they use those small souvenir bats as weapons because they are easy to conceal and carry in case they got to use them against other rival gang members."

While the officer's testimony that Avenues gang members told him they use small souvenir bats as weapons was ostensibly offered as basis evidence to support the officer's opinion, the prosecutor in fact never asked for his opinion.  The only evidence as to the

11

souvenir bat being a weapon was the officer's hearsay testimony that Avenues gang members told him they used small souvenir bats as weapons.[4]

In that the charge of possession of a billy was found true, the trier of fact must have relied on the above basis evidence for its truth.  As such, the majority's general characterization and discussion of basis evidence as not being submitted for its truth is erroneous, at least as it applies to this case.

I recognize that an expert gains expertise over a period of time and from a multitude of sources.  For foundational purposes, the expert must be able to testify to certain things for purposes of communicating his or her expertise and the general nature of those things relied upon in forming his or her opinion.  However, here the expert went well beyond this; he communicated inadmissible hearsay pointed directly to a key element of the crime of which defendant was charged.  The statements of other gang members that souvenir bats were used as weapons were relayed to the trier of fact as being true and were considered for their truth.

---

[4] While not argued on appeal, Officer Osorio's basis testimony was inadmissible hearsay.  (See *People v. Dean* (2009) 174 Cal.App.4th 186, 193-203 [Fourth Dist., Div. Two] ["'[W]hile an expert may rely on inadmissible hearsay in forming his or her opinion [citation], and may state on direct examination the matters on which he or she relied, the expert may not testify as to the details of those matters if they are otherwise inadmissible.' [Citation.]  This rule is based in part upon the rationale that by allowing an expert to testify as to the details of inadmissible hearsay reports, the jury might improperly consider such testimony as independent proof of the facts described in the reports and the adverse party is denied the opportunity to cross-examine the person who made the statements."].)

It also appears that the majority has considered these statements for their truth, as stated in the majority's recitation of the facts: "From prior contacts with members of the Avenues street gang, Officer Osorio was aware that the Avenues used such souvenir bats as weapons against rival gang members, because they are easy to conceal." (See maj. opn. *ante*, at p. 4.) Here, the majority simply ignores the reality that most basis evidence is submitted for its truth and is considered for its truth.

As to the issue of whether the statements were testimonial for purposes of the confrontation clause, Justice Corrigan in her dissent in *Dungo, supra,* 55 Cal.4th at pages 641 through 643 aptly points out that there is no consensus as to exactly what statements are testimonial and what statements are not. In considering the various tests as set forth in *Williams* and *Davis v. Washington* (2006) 547 U.S. 813, she believes an "appropriate inquiry is whether, viewed objectively, a sufficiently formal statement was made for the primary purpose of establishing or proving past facts for possible use in a criminal trial." (*Dungo, supra,* at p. 644 (dis. opn. of Corrigan, J.).)

Here, the record is relatively bare as to the circumstances surrounding Officer Osorio's conversations with purported gang members. The only evidence in the record as to the formality surrounding the making of the statements is the officer's testimony that the statements were made during "casual conversations." While the gang members may describe the circumstances differently, we have no evidence relative thereto. As such, using Justice Corrigan's least restrictive formulation, that the statement must be a "sufficiently formal statement," I cannot come to the conclusion that the statements were

13

testimonial.  Further, I can only speculate as to the primary purpose behind the giving of the statements to Officer Osorio.  As such, I cannot find that defendant's confrontation rights were violated.

KING
J.